**HILLERY, Plaintiff v. JACKSON, Defendant.**

Ohio Appeals, Second District, Fayette County.

No. 191. Decided January 10, 1931.

Maddox & Maddox, Washington C. H., for plaintiff.

Ed L. Bush, Washington C. H., and Rell J. Allen, Washington C. H., for defendant.

## OPINION

By HORNBECK, J.

This case comes into this court on appeal.

Plaintiff is the owner of a part of Lot No. 4 of Water's Addition to the City of Washington with a frontage of 41.5 feet on Market Street and 87 feet deep.

He alleges that on or about February 1, 1930, and at other times the defendant, Mary W. Jackson, and her agents, have unlawfully entered into, upon and along the westerly side of his premises from Market Street to the rear thereof, has trodden down the grass and injured the soil with her automobile; that plaintiff has protested the trespass of defendant but that defendant refuses to desist; that plaintiff has no adequate remedy at law. The prayer of the petition is for an injunction against defendant restraining her from in any manner interfering with plaintiff's possession and enjoyment of his premises.

Defendant by answer admits her entrance into, upon and along the westerly side of plaintiff's premises, his protests and denies the other allegations of the petition.

By way of second defense and cross-petition defendant avers ownership of a part of Lot No. 4 in Water's Addition to the City of Washington with a frontage of 34 feet on Columbus Pike and a depth of 112 feet; that the plaintiff adjoins her on the north; that she has a garage and coal house on the rear of her lot and that she and her predecessors in title have had the open, continuous use of a right of way 8½ feet in width, 7 feet of which is upon and over the westerly side of plaintiff's premises and 1½ feet thereof upon the premises to

the west thereof. Then follow the necessary averments to constitute a prescriptive easement in the right of way in dispute.

By way of third defense and cross-petition defendant avers that in 1871, Samuel J. Anderson acquired title to the whole of Lot No. 4 in Water's Addition; that during his ownership there were two houses on the southerly end of the lot fronting on Columbus Avenue; that coal houses and other outbuildings were built in the rear of said houses near the center of said lot; that there was a house located on the northwesterly portion of said lot fronting on Market Street with a coal house in the rear and near the center of said lot; that Samuel J. Anderson established and laid out a way extending from Market Street south as a means of ingress and egress to said coal houses. That said way has been open, apparent, continuously used and is and was reasonably necessary to the beneficial enjoyment of the several houses located on said lot. That later Samuel J. Anderson subdivided said lot and sold the northerly portion fronting on Market Street to other parties. That said way was open, apparent and the only means of ingress and egress by which he could get in coal and other supplies to the portion of the lot retained by him; that after his death the southerly portion of the lot was divided and defendant acquired title to the part described in her answer and cross-petition and that she has no other means of ingress and egress to the improvements on the rear of her lot; that the way has been improved and was plainly visible to plaintiff when he acquired title to his premises; that the way as created by the owner, Samuel J. Anderson for the common benefit of the parcels into which it has since been divided has been used continuously since then and passed to the defendant by implied grant. Defendant prays that she be decreed an easement in said way and that the plaintiff be enjoined from interfering in any manner with her proper use thereof. A reply is filed admitting the ownership of defendant to the lot described in her answer; admitting that Samuel J. Anderson acquired ownership to Lot No. 4 in 1871, and that there were two houses on the part of the lot which fronted on Columbus Avenue and denying the other allegations of the amended answer and cross-petition.

The Amended Petition from which we have liberally quoted carries a defense and cause of action, the third, of implied grant, which was not averred in the petition upon which the parties went to trial in the Common Pleas Court.

The amendment was added, no doubt, to conform to the theory of the trial judge in deciding the case, wherein he relied upon **Frate v Rimenik, 115 Oh St 11.**

The court found, as bound to do to sustain an implied grant to defendant, that the way in controversy was laid out by Samuel J. Anderson while he owned all of Lot No. 4 as necessary to the proper, reasonable, and convenient use of all of the premsies.

This conclusion was natural in view of the relationship of the owners of the parts of Lot No. 4 when divided. We had an advantage not enjoyed by the trial judge in the testimony of L. C. D. Anderson and Mrs. Addie Chester, son and daughter respectively of Samuel J. Anderson. Both of them were helpful witnesses, knew the facts concerning which inquiry was made and stated clearly, definitely and fairly their recollection of the time when the way was laid out and the character of the use.

The record made up of the testimony of twenty-one witnesses in a controversy over title to real estate is remarkably free from contradiction. Practically all who testified on the subject were agreed on three propositions:

(1) That the way was established more than 21 years prior to the institution of this suit.

(2) That it was used continuously thereafter by the occupants of what is now defendant's premises to haul coal and other supplies to the coal house on the rear of her lot.

(3) That there was no way established from Delaware Street nor Columbus Avenue to defendant's lot and that the way in use was the only practical way of reaching defendant's coal house and now her garage.

Samuel J. Anderson acquired all of lot No. 4 in 1871. In 1879 he deeded what might be called the northeast quarter thereof to his son, L. C. D. Anderson, from whom by mesna conveyance plaintiff takes title.

In 1879 he also deeded what might be called the northwest quarter of Lot No. 4 to his wife, Mary J. Anderson, through whom Mrs. F. Eggleston claims title. Samuel J. Anderson thus retained the southerly half of Lot No. 4 in his own name and died without having transferred it. His wife survived him several years.

The half which Samuel J. Anderson retained was divided and sold by his executors in 1912 or '13. Ed Dice now owns what might be known as the southwest quarter of Lot No. 4,

with a frontage of 48.18 feet on Columbus Pike, the depth of which is about the same as defendant's lot. Mary W. Jackson, the defendant, took title in 1912 to the southeasterly quarter of Lot No. 4 with a frontage of 34 feet on Columbus Pike and extending back 112 feet and adjoining the Hillery piece.

Giving consideration first to the defense of an implied grant. It is the theory, and the pleadings so state, that the common proprietor of Lot No. 4, S. J. Anderson, laid out the way under consideration as a necessary and proper convenience for service to the coal houses and outbuildings on the line, between what is known as Hillery and Eggleston and the Dice and defendant Jackson portions of the lot. The record, however, does not sustain the claim that S. J. Anderson established this way. Mary J. Anderson, the wife of S. J. Anderson, and mother of Addie Chester, acquired the Eggleston lot in 1879, and in 1883, four years thereafter, took title to the Hillery piece from her brother, L. C. D. Anderson, a son of S. J. Anderson. It is the direct and undisputed testimony of Addie Chester that her father did not lay out the pass-way prior to the time he disposed of the north half of Lot No. 4. This is to be found in the portion of the testimony taken before our court in the following questions and answers:

"Q. Up to the time you disposed of the property, do you know whether or not your father, your mother or yourself, ever laid out a pass-way or right-of-way from Market Street back to the rear of the lots that fronted on Market Street and to the rear of the houses that fronted on Columbus Avenue?

A. No sir; there was a drive-way there for the convenience of my mother, all I knew, and of course, the others used it. They were given permission to use it for convenience. Of course, it was more convenient to go in from Market Street.

Q. Do you know whether or not your father, while he owned the premises, ever laid out a pass-way prior to the time he disposed of it?

A. Not to my knowledge, he didn't.

Q. If a drive way was used between the lots out there on Market Street for the convenience of yourself and your mother and Mrs. Jackson, when was that done?

A. Why, when she built the house that I own, but Mrs. Jackson didn't own the property then.

Q. Who owned the property at that time, that Mrs. Jackson now owns?

A. My father.
Q. Was he living?
A. He was at the time, yes.
Q. Then your father owned and was living in the property Mrs. Jackson now owns when the house was built on Market Street?
A. No, he didn't live in the house Mrs. Jackson owns, he lived in the old house.
Q. He lived in one of the houses that fronted on Columbus Avenue at the time that your house that you sold to Mr. Hillery was built?
A. Yes."

L. C. D. Anderson, the son of S. J. Anderson, corroborates his sister:

"Q. When you received title to this lot was there any pass-way extending from Market Street back to the middle of the lot, or half way between Market and Columbus Avenue?
A. I am certain there was not.
Q. At any time that you owned that portion of the premises did you ever lay out a pass-way or give any ground of right-of-way or easement over any portion of that for egress and ingress from Market Street?
A. No."

Inasmuch as S. J. Anderson transferred the Eggleston and Hillery pieces in 1879, and L. C. D. Anderson knows that the way was not there when he acquired the property, and that it was not placed there during the period of his ownership, it is obvious that it must have been laid out after he transferred the title in 1883.

This time in all probability is in accord with the recollection of all the witnesses. The longest period that any witness fixes during which this way was in use is 50 years, and if it were laid out in 1883 it would be 47 years to 1930, which is a slight discrepancy in view of the fact that witnesses were depending entirely upon their memory.

At the time then that this way was laid out, Mary J. Anderson owning the northern half of Lot No. 4 and her husband

the southern half. there was as separate and distinct ownership as though the titles were carried in individuals who were not husband and wife. They were strangers in titles.

In view of the foregoing facts, it is evident that the proof fails to establish the claim of the defendant, that S. J. Anderson laid out this way for the common use of the owners of the four quarters of Lot No. 4. Nor does it establish the fact that Mrs. Anderson and her husband, S. J. Anderson, laid this way' out by common consent for the use of all of the owners of Lot No. 4. It appears that Mary J. Anderson established this way for the joint use of the Eggleston piece and the Hillery piece at the time that the house was built on the Hillery lot. We cannot therefore say that the facts in connection with the establishment of this way bring it within the purview of an implied grant as defined in. **Frate v Rimenik, 115 Oh St 11.**

On the claim of a prescriptive right to the way. The testimony of most of the witnesses was directed to the fact that the way had been in use for many years. But the character of this use, and the conditions under which it was used with respect to the owner of the Hillery piece is only directly touched by the defendant and Addie Chester. This defendant lived in the property which she now owns for a number of years as a tenant of S. J. Anderson after he had disposed of the north half of Lot No. 4, and during that period says that she used this right-of-way for her convenience and to unload coal and other materials to her coal house. She is very definite touching the character of this usage as appears from her cross-examination and re-direct examination. Page 50 of the record:

"Q. Did you at any time have any writing of any kind giving you a grant or right to use that right-of-way?

A. No, we never had any writing, because it has always been there, my grand parents always gave us permission to use it; they owned it and gave us permission to use it.

Q. Your grand parents gave you permission to use it before you owned it?

A. Yes, before we owned it, used it as that."

Page 51:

"Q. Who gave you permission when you lived with Grandpa Anderson?

A. Grandmother Anderson.

Q. Did you get a second permission to use it any other time?

A. When we bought where we live now she gave us permission to use it.

Q. What other heirs give you permission?

A. Mrs. Chester didn't object.

Q. I am not asking if they objected; did she give you permission?

A. She gave us permission.

Q. That was after 1909?

A. I don't just remember.

Q. After she owned it she gave you permission?

A. She did.

Q. After you had acquired title to the property in 1912 both Mrs. Anderson, your husband's grandmother, and Mrs. Chester, your husband's aunt, gave you permission?

A. Gave us permission to use that."

At page 52:

"Q. Your permission to use the property only occurred after you bought the property?

A. Yes, after I bought the property I used it as such. They gave us permission, we helped to keep up the drive, my husband helped keep up the drive.

Re-Direct:

"Q. Do you mean that you went and asked them for permission, or did you just use it?

A. No, they just told us we could use it as it had always been used. We didn't think it necessary to ask for permission to use it when we used it all the years it had been open.

Q. Was there any question about the right to use it?

A. No, there never was any question.

Q. Did you go and ask them if you could use it?

A. No, they just told us to use it.

Q. Did you ever ask Mrs. Chester to use it?

A. I didn't think it necessary when they told us to use it, it had always been used as such, she never objected.

Q. That is what you mean by that there never was any objection?

A. Yes, there was never any objection."

It is urged inasmuch as Mrs. Jackson was but a tenant during the period that she testified that she occupied the way by permission it should not be binding upon her as owner. We think that this would not alter the situation, as the owner from whom she rented would be bound by the attitude of the owner of the Hillery piece toward his tenant, the defendant. Mrs. Chester corroborates Mrs. Jackson:

"Q.  What permission, if any, did you give Mary W. Jackson, or any other person, to use that driveway?

A.  Well, they were just given permission to use it and supposed to use it as long as I owned it, after that I always thought it would be closed up.

Q.  The use of that pass-way extending from Market Street back to the coal houses by Mrs. Jackson, the defendant in this action, over your ground was by permission, was it not?

A.  Just by permission.

Q.  You permitted her to go in and out?

A.  Certainly, we gave her permission to use it."

There are some circumstances in the case which tend to show adverse use, for instance the participation in the improvement of the way by Mr. Dice and the defendant. Our attention is directed by counsel for the defendant to the burden of proof, and it is insisted that it is upon the plaintiff, inasmuch as a continuous user for more than the prescriptive period appears. This position is in accord with the first proposition of the syllabus in Holtsberry v Bounds et, 9 A. C. C. Rep. (N. S.) 510. But under the rule that a status having once been shown to exist it is presumed to continue would prevent a presumption of adverse possession under the proof in this case, because Mrs. Chester fixes the character of the use of the way as permissive at its inception. However, the evidence is so conclusive to the effect that the use of the way was permissive that it is not necessary for the court to make any nice distinction on the question of the burden of proof.

No principle is better established, nor more uniform, than the rule that one of the elements necessary to establish title by prescription is that the use of land of another by the owner of the dominant estate must be as a matter of right, and that mere permissive use is not adverse and cannot give an easement no matter how long it may be continued.

That the ultimate principle upon which adverse possession is based is that it must be hostile. 19 Corpus Juris, 888, 889. This has been restated as late as the **Pennsylvania Railway Company v Donivan, 111 Oh St 341, Pavey v Vance et, 56 Oh St 162,** a leading case in Ohio, conflicts in no way with our determination, because in the first proposition of the syllabus the premise is laid that the use of a way over the land of another must be without permission before a prescriptive right begins.

We can employ in this case with but slight change the language of the Supreme Court in **Pennsylvania Railway Company v Donivan, supra,** at page 350; "it is not doubted upon an examination of this record that the use of this way has been open, notorious and continuous for more than the statutory period, but we are unable to find sufficient evidence that the use has been adverse. That it is necessary that the use be adverse, all the authorities are in perfect harmony."

Considerable evidence was developed tending to show that this way was the only means of ingress and egress that had ever been used to reach the coal house on the rear of defendant's lot, and some of the testimony would indicate that there was no other way. However, the record is not satisfactory in this respect. The lot is narrow, but we do not have any information which will enable us to determine how much space is left for a driveway on one side or other of the house. The lot faces on Columbus Avenue, and in the absence of positive and definite proof that no way could be opened up over it, we must assume that it can be done, although not as convenient as desired. At one place in the record Mr. Dice apparently is indicating the distance between his property and defendant's and states that it is 12 feet, but the proportion upon the defendant and upon him does not appear.

Be that as it may, it is not incumbent upon a stranger in title, such as Mary W. Jackson was, to provide a way of necessity for the defendant and her predecessors in title. Ways of necessity cannot exist where no unity of ownership of the alleged dominant and servient estates, for no one can have a way of necessity over the land of a stranger. And this rule obtains even though one's lands are completely surrounded by the lands of another where there is no privity of ownership. 19 C. J. 921, Ellis v Blue Mountain Forest Association (N. H.), 41 Atl. 856. Note 922.

We are appreciative of the fact that the defendant in this case has very strong equities in her favor, but equity follows the law, and giving her the most favorable interpretation to which the facts adduced are susceptible we are convinced that she has not sustained the claims asserted in the second and third defenses of her answer and cross-petition. The prayer of the petition of plaintiff will therefore be granted.

KUNKLE, P. J., and ALLREAD, J., concur.