**MOGREN et, Plaintiffs-Appellee, v. A. P. INVESTMENT COMPANY,
Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23402. Decided January 26, 1956.

Elmer C. Myers, for plaintiffs-appellee.
Robert M. Levin, for defendant-appellant.

## OPINION

By SKEEL, J:

This appeal on questions of law and fact comes to this Court from a judgment and decree entered for the plaintiffs on plaintiffs' petition seeking to enjoin defendant from obstructing plaintiffs' use of a private driveway located for the most part on defendant's property. The plaintiffs claim an easement by prescription. The defendant's answer admits

plaintiffs' ownership of the property described in their petition, alleges its ownership of certain lots referred to in plaintiffs' petition, which it purchased at auditor's sale of forfeited lands. Defendant admits that there is a driveway running over some parts of its property. The defendant specifically denies plaintiffs now possess or own a prescriptive right to use said driveway in conjunction with their property which is immediately adjacent thereto. The defendant admits erecting a barrier to prevent plaintiffs from the use of its property for driveway purposes.

By cross-petition, the defendant alleges the plaintiffs destroyed its barricade and continue to use its property for driveway purposes and prays that plaintiffs be enjoined from the use of its property and seeks damages for the destruction of the barricade and damage to the garage and shed. The plaintiffs filed an answer to the cross-petition and reply to the answer putting all new allegations in issue. The issue of damage claimed by the defendant has been dropped from the case.

The record title of the lands or lots involved as shown by the record is as follows:

The Home Park Land Company dedicated its Dunham-Turney-Lee Roads Subdivision in May, 1926, containing 547 lots. The allotment is on the east side of Dunham Road at its intersection with Turney Road. The streets established by the allotment immediately north of Turney Road, running east from Dunham, are, first, Mendota Road and second, Rowena Road. Between Rowena and Mendota Roads are six lots fronting on Dunham Road. Beginning at Rowena and proceeding south, the numbers of the lots are 362, 363, 364, 365, 366 and 367. The first three lots, beginning from the rear line of the lots facing on Dunham Road and facing north on the southside of Rowena, are numbers 361, 360 and 359. The first two lots behind the Dunham Road frontage facing south on the north side of Mendota are numbers 368 and 369. The defendant purchased at the County Auditor's Sale of Forfeited Lands sublots 359, 361, 362, 363, 364 and 365. The plaintiff, by purchase in 1952, acquired sublots 366 and 367, 368 and 360. A house is located on sublots 366 and 367, a garage partly on sublot number 360 and the balance on sublot 359 and a shed partly on sublot 359 and partly on sublot 370.

As stated above, the allotment was dedicated in May of 1926 by The Home Park Land Realty Company and the streets accepted for public use by ordinance of the Council of the Village of Maple Heights. In October, 1926, The Land Company sold sublots 366 and 367 on which the house above-mentioned was located (presumably the farm-house of the owner of the farm allotted by The Land Company), (the house being located in part on each lot), to Anton Maresh and Antoinette Maresh, husband and wife. These grantees from The Land Company sold this property (sublots 366 and 367) to Florence A. Meck by warranty deed recorded October 13, 1926. The Land Company also sold to Florence A. Meck sublot No. 368 at about the same time. By deed dated November 16, 1929, Florence A. Meck, widow, sold sublots 366, 367 and 368 to Ethel B. Woods. The record shows that Ethel B. Woods occupied the premises at least from the date of purchase until the sale of the property to the plaintiffs in 1952.

The Land Company deeded Lots Nos. 361, 362, 363, 364 and 365 to

Clark T. McConnell by deed dated December 28, 1929, the record title remaining in his name until they were forfeited to the State for non-payment of taxes in February of 1950. The taxes on these lots became delinquent on default of payment of the taxes due for the first half of 1929 which were payable in January, 1930. Thereafter, all tax assessments became delinquent year after year until the lots were forfeited to the State of Ohio by the procedure provided by law in such cases, the forfeiture of the lots to the State being on the 28th day of February, 1950. On May 15, 1950, the defendant purchased said lots at the County Auditor's Sale of Forfeited Lands as provided by law.

At some time, either before or after, Ethel B. Woods became the owner of sublots Nos. 366 and 367 and occupied the house thereon, a driveway came into use running from the garage in a southwesterly direction to about the north line of lot No. 366 and then diagonally from the north side of the house at the side door near the rear of the house north-easterly to Dunham Road. In its wandering course, starting from the door of the garage, on Lot No. 360, it encroached in part on Lots Nos. 361, 365, 364, 363 and just a small part of the southwest corner of Lot 362. According to plaintiffs' Exhibit No. 1, the driveway occupies only a small part of plaintiffs' property, takes up at least half of the area of defendant's Lot No. 365 and cuts completely across the front of Lots Nos. 364 and 363 from side line to side line and ending by occupying more than one-half the front line of Lot No. 363 on Dunham Road.

The plaintiffs' evidence, from witnesses who visited Mrs. Woods (she now being incapacitated and therefore could not be called as a witness) from 1930 until she left the property in 1952, was to the effect that the driveway was in use openly and notoriously during all of that time. Whether it was adverse or with consent is not covered by any of the plaintiffs' testimony, it being testified to by one witness that he thought the property to the north of the house, that is the lots now owned by defendant, were a part of the homestead belonging to Mrs. Woods. There were no landmarks to indicate separate ownership. There is considerable evidence that Mrs. Woods maintained a fine rock garden north of the driveway which in fact occupied a part of the land now owned by the defendant. There is also some evidence that Mrs. Woods' occupancy and the use of the driveway extended back to 1927 or 1928. However, she did not buy the property until November of 1929, which gives support to her witnesses' recollection that she did not move there until 1930.

The defendant produced one witness, Clark T. McConnell, a lawyer, who was President of the allotting company at the time the allotment was dedicated and who received and had deeded to him Sublots 361 to 365, inclusive, as and for a fee for legal work. While he admitted on deposition he did not give Mrs. Woods permission to maintain her driveway over his property when she first moved to the property, he did testify on the trial of the case that four or five years after he became the owner of the above lots, he had a conversation with Mrs. Woods on a visit to the premises which was as follows:

"Q. You stated before that you had no objection to her using this

drive under certain conditions under which you permitted her to use the driveway.

"A. I told her that it would have to be a temporary arrangement because if I ever sold the property, the owners would probably not want a drive—her driveway or any part of it on their land."

And on cross-examination, this witness testified:

"I have no recollection of any discussion other than the fact that she had put that driveway there, found that it was on my property, and did I care. And I answered: 'No, with the conditions I previously stated.' "

From the state of the record as we find it, on the claim of the plaintiffs that they and their predecessors in title had maintained the driveway over the property purchased by the defendant in 1950 at the sale by the County Auditor of forfeited lands, openly, notoriously, adversely and continuously for a total and continuous period of twenty-one years or more, we must conclude that the plaintiffs failed to establish such open, notorious and adverse use of the driveway by the proper degree of proof, first because such use was permissive and second, even though this be not true, since the State took possession of the property by forfeiture in February, 1950, and since there can be no prescriptive right claimed against the State, the claimed open, notorious and adverse possession of the plaintiffs ended when the State took possession which was less than twenty-one years from the date Mrs. Woods first made use of the driveway. No prescriptive right to the use of the driveway was, therefore, established.

Two other questions are presented by the record and the state of the pleadings. The first is whether or not an alleged prescriptive right to the use of real property can survive a forfeiture of the property to the state upon which the easement of use or ingress and egress is claimed by the passage of time (open, notorious and adverse possession for a period of twenty-one years) because of the provisions of §5723.12 R. C., where such defense was not presented to the trial court. Can such defense be presented for the first time in the reviewing court on an appeal on questions of law and fact? It is claimed by the plaintiffs that the defendant has no right to present this question in this court because it was not argued in the trial court from which this appeal is taken. The plaintiffs' petition, in part, seeks to quiet title to the use of the driveway against the defendant. Any defense to such claimed right of the plaintiffs does not create a new issue and, therefore, this court may consider such defense upon appeal on questions of law and fact, that is that the plaintiffs have no legal right to the use of the driveway because title was derived through forfeited land sale.

The second question presented is whether a prescriptive right survives as against a purchaser of land forfeited to the State for nonpayment of taxes and then sold to the purchaser at County Auditor's Sale of forfeited lands as provided by law.

Sec. 5723.12 R. C. provides:

"The county auditor, on making a sale of a tract of land to any person under §§5723.01 to 5723.19, inclusive, R. C., shall give such purchaser a certificate of sale. On producing or returning to the auditor

the certificate of sale, the auditor, on payment to him by the purchaser, his heirs, or assigns, of the sum of one dollar and twenty-five cents, shall execute and deliver to such purchaser, his heirs, or assigns, a deed, which deed shall be prima facie evidence of title in the purchaser, his heirs, or assigns. When a tract of land has been duly forfeited to the state and sold under such section, the conveyance of such real estate by the auditor shall extinguish all previous title and invest the purchaser with a new and perfect title, free from all liens and encumbrances, except taxes and installments of special assessments and reassessments not due at the time of such sale, and except such easements and covenants running with the land as were created prior to the time the taxes or assessments, for the nonpayment of which the land was forfeited, became due and payable."

The alleged easement of the plaintiffs does not come within the exceptions of this statute. A right to the use of the property of the subservient estate created by a rule of law, that is by prescription, cannot vest the owner of the dominant estate with any greater right in the use of the property of the subservient estate than that of the owner of such subservient estate.

In the words of the statute, the purchaser of forfeited lands at Auditor's Sale is vested with "a new and perfect title free from all liens and encumbrances, except taxes and installments of special assessments and reassessments not due at the time of the sale and except such easements and covenants running with the land as were created prior to the time the taxes and assessments for the nonpayment of which the land was forfeited became due and payable."

Under the facts in this case, a prescriptive right could not be claimed until the twenty-one year period had passed which could not come to pass here until long after the taxes became delinquent. It follows that there was no easement created prior to the first date of tax delinquency. The taxes for which forfeiture was exercised first became delinquent in 1930. The right to use the driveway, if in fact such right was established (which was not done in this case), was completely destroyed by the forfeiture of the property over which such right is claimed, to the State of Ohio for nonpayment of taxes. A purchaser of forfeited lands at Auditor's Sale, as provided by law, acquires a new and perfect title free of the plaintiffs' claim of an easement by prescription for driveway purposes. DeSeife v. Freedom-Valvoline Oil Company, 61 Abs 72; Monroe v. Doe, 7 Oh Rep 262; State, ex rel. v. Zangerle, 145 Oh St 433, at page 438.

For the foregoing reasons, a decree may be entered for the defendant. Exceptions. Order see journal.

KOVACHY, PJ, HURD, J, concur.