## COOKSTON, Plaintiff, v. BOX et, Defendants.

Common Pleas Court, Cuyahoga County.

No. 673825.   Decided October 23, 1957.

Owen C. Neff, Raymond E. Cookston, Cleveland, for plaintiff.
Roland A. Baskin of Baskin, Kelley, Lausche & Heavilin, Cleveland, for defendants.

## OPINION
By LYBARGER, J.

### STATEMENT OF FACTS

In this action the plaintiff seeks a restraining order to keep the defendants from erecting and maintaining a fence or obstruction at any place on their property whereby free passage on a pathway across their land by the plaintiff and others would be impeded.

January 17, 1908 there was laid out the Mathews and Gilbert Sub-Division No. 6 known as "Oakwood on the Lake" in what is now the city of Rocky River, Ohio. The lots with which this case is concerned lie between the westerly bank of the west branch of Rocky River and Riverdale Drive. Originally there were two small islands in the sub-division which were bounded by Rocky River to the east and lagoons to the west; and the lots on these islands had no access to any street or public highway, but were accessible only by way of Rocky River or the lagoons. What was called North Island was joined to the mainland some time in 1927 when the lagoon to the west of it was filled in. The defendants own sublot No. 629 whose easterly boundary is Rocky River, and sublot No. 649 whose westerly boundary is Riverdale Drive. Since the filling in of the lagoon these two sublots have adjoined one another, the westerly line of Lot No. 629 being the easterly line of Lot No. 649. The answer of the defendants indicates that the description of the land on which they rely is by metes and bounds and it describes the two lots as one parcel of land. The defendants have access to their land by way of Riverdale Drive to the west and Rocky River to the east.

The plaintiff owns sublots No. 626, 627, 628, 630 and 650 in the Sub-Division. Sublot 630 is to the north of sublot 629 owned by the defendants. It abuts on Rocky River to the east and is bounded by private property on the north, south and west. It is not adjacent to any public highway and cannot be reached except via Rocky River or by going over the land of other persons. The plaintiff has access to sublots 626, 627 and 628 through sublot 650 which faces on Riverdale Drive.

The defendants acquired their property April 4, 1949 but they were familiar with the location for about ten years before.

In 1926 taxes on Sublot 649 became delinquent and remained so

through January 31, 1941 when the land was forfeited to the state. The lot was sold to one of defendants' predecessors in interest by the County Auditor, July 31, 1944.

The plaintiff lived in the area as early as 1932 and bought sublot 630 in 1949. She acquired sublots 626 and 650 in 1950 and lots 627 and 628 in 1954.

Prior to 1927 persons occasionally walked over a pathway on private property along the westerly edge of North Island in going north and south on the island. Such path was not well defined or improved. From 1927, when the lagoon was filled in, to the present time, owners and occupants of land in the sub-division mentioned, tradesmen and delivery men and the public in general have used a pathway which runs in a general northerly and southerly direction (and over what was formerly the center of the lagoon) from one end of North Island to the other and across sublot 649, the land of defendants. The plaintiff has used this path since 1932. Presently the path is well defined where it extends across the land of the plaintiff, having been improved with stepping stones in recent years. It is also well defined across the land of the defendants and northerly therefrom.

On sublot 629, which is the easterly part of defendants' property, there is a two-story dwelling, a shed and several fences. In the past there was a fence close to the westerly line of this part of the land. Orginally sub-lot 649 was not improved although now it has been graded and contains a driveway which leads to defendants' dwelling to the east. It was not fenced prior to this year, when defendants erected the fence whose maintenance plaintiff now seeks to enjoin. The evidence indicates that the path which crosses defendants' land lies along the easterly border of lot 649 and that it is about five-feet wide. It is several inches west of the westerly line of lot 629 at the nearest point and is within a close distance of the dwelling house.

## CONCLUSIONS OF LAWS

In the light of the above facts there is presented for decision the issue of whether or not the plaintiff and the public have an easement over the defendants' land. Can an easement be enforced on the ground that it was created either by implication, necessity or prescription? Did the intervention of a forfeiture of lot 649 to the state and a subsequent tax sale preclude the creation of any easement over defendants' land?

A court of equity has "adequate power to afford full relief to all parties before it." (**Brinkerhoff, Trustee v. Smith et al, 57 Oh St 622.**) It is a court of conscience, must do equity and must apply "rules of reason and righteousness." (**20 O. Jur. 2nd, page 18.**) But in doing so it must stay within the framework of those precedents and rules of law and equity which govern the pertinent facts before it.

There has developed a great body of law concerning easements of every kind. It is hardly necessary here to characterize an easement as an incorporeal herediitment annexed to the ownership of real property or to review its essential qualities, since the same have been so fully set forth in the decisions and text books. An easement may arise

by express grant, by implication, by prescription or estoppel. The facts of the instant case obviate need of considering grant or estoppel.

In Ohio easements may be implied "from a conveyance describing the premises as bounded upon a way, from a conveyance with reference to a plat or map, from a use existing at the time of severance of ownership of land, and from necessity alone, as in the case of ways of necessity." (18 O. Jur. 2nd, Easements, Sec. 27, pg. 552.)

The prerequisites of an **easement by implication** have been set forth in syllabus one of the leading case, **Ciski et al v. Wentworth et al, 122 Oh St 487**, as follows:

"While implied grants of easements are not favored, being in derogation of the rule that written instruments shall speak for themselves, the same may arise when the following elements appear: (1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only."

It is the law that "adverse possession for twenty one years is not necessary to create an easement by implied grant" (**Helle v. Markotan, 73 Abs 387**).

It cannot be overlooked that the first requisite for such easement is **unity of ownership** as the foundation of the right. "The easement derives its origin from a grant, and cannot legally exist where neither the party claiming it nor the owner of the land over which it is claimed nor anyone under whom they or either of them claim, was ever seized of both tracts of land" (18 O. Jur. 2nd, Easements, Sec. 32, page 563).

A typical example of the implication of the grant of an easement of way is "where an owner of land has continually used an apparent or actually known way over one part of his land in order to reach another part thereof and transfers the latter part." Here "the grant of an easement to continue the use of such way will be implied as an appurtenance of the land transferred, if the way in question is reasonably necessary to the enjoyment of the land granted, and materially adds to its value" (18 O. Jur. 2nd, Easements, Sec. 36, page 567).

An **easement of necessity** is one implied by law to carry out the intent of the parties, as determined by a fair construction of the conveyance, on the theory that without it the grantee or grantor, as the case may be, cannot make use of his land. See: **Trattar v. Rausch, 154 Oh St 286.**

As in the case of an easement by implication so in that of an easement of necessity it can only be had in land owned by the grantor at the time of the conveyance, and never out of land of a stranger. A way of necessity cannot exist where there is no unity of ownership of the alleged dominant and servient estate. See: **Hillery v. Jackson, 40 Abs 202.**

Applying the above principles to the facts in the instant case, the court fails to find that at any time was there any unity of ownership or

title in plaintiff's sublot 630 and either of defendants' lots 629 or 649. True, all lots were in the same subdivision; but there is no evidence as to who were the first grantees, or who owned the lots in the earliest days following the recording of the plat. Definitely there is no evidence that the same person owned the plaintiff's lot and the two lots of the defendants. The evidence is that in 1927 (when the north lagoon was filled and persons began walking over the pathway on sublot 649), Julia E. Manning owned sublot 629; someone else had title to lot 649, and it is not revealed who held lot 630. Unfortunately for the plaintiff, there is no evidence that she owns a parcel which at any time before she bought it enjoyed an appurtenance such as a way over land owned commonly by one of her predecessors in interest. So far as the evidence goes those who formerly owned lot 630 had no title to either lot 629 or 649. There never having been unity of ownership, hence no severance of such unity, equity cannot imply the granting of an easement nor can it declare that a way of necessity was reserved by implication.

Next the court must consider whether the plaintiff acquired an **easement by prescription.** It is a general proposition of law that—

"When one who is the owner of a tract of land uses a way over the land of another for the convenience of egress and regress to his own land, without let or hindrance and without obstruction for the period of twenty-one years, he thereby, in the absence of anything to the contrary, acquires a right by prescription to its use as an incident to his land; and the right will pass by a conveyance or descent of the land." **(Pavey v. Vance et al, 56 Oh St 162.)**

To establish an easement by prescription there need be no grant, either express or implied. It is necessary that there exist for twenty-one years or more, open, notorious, continuous adverse use and enjoyment by one or more persons of a way over the estate of another.

It should be noted that plaintiff's easement, if any, depends on prescription, not adverse possession. "Prescription relates to incorporeal rights, while adverse possession applies to an interest in the title to the property." A prescriptive right is acquired by open, notorious, continuous, and adverse use for a period of twenty-one years. The title by adverse possession depends upon all of those elements with the additional element of exclusive possession." **(Penna. R. R. Co., v. Donovan, 111 Oh St 341 at Pgs 349-50.)**

In the well-considered opinion of the Court of Appeals in the case of **Smith v. Krites, 90 Oh Ap 38,** the Court sets up the essential elements of a title by prescription as follows:

"1. That the use and enjoyment of what is claimed as an easement was adverse under claim of right.

"2. That the use and enjoyment of what is claimed as an easement was exclusive.

"3. That the use and enjoyment of what is claimed as an easement was continuous and uninterrupted for a period of 21 years.

"4. That the use and enjoyment of what is claimed as an easement was within the knowledge of the owner of the estate over which the easement is claimed."

The Court then points out that possession of a way need not be con-

tinuously in one person only; that the public may attain prescriptive rights; that use of another's land without permission and with the owner's knowledge, is not itself adverse and constitutes evidence of a claim of right; that the term "exclusive" means that the owner "and her predecessors in title were thereby excluded from exercising individual proprietory rights therein," and that open and notorious use of a way may charge the owner with knowledge of such use.

The Court is convinced by the weight of the evidence in the instant case, that beginning in 1927 and continuing down to the present, the public in general (and since 1932 the plaintiff) has made open, notorious, continuous and adverse use of a pathway over defendants' sublot 649. This use was within the knowledge of the defendants.

In this connection the defendants suggest three defenses to defeat plaintiff's alleged easement. First, they say the land was unenclosed and stands on a different footing than enclosed lands. **Davidson v. Dunn, 16 Oh Ap 263**, and **Board of Education v. Nichol, 70 Oh Ap 467.** The Court is convinced that the facts in these cases, however, are clearly distinguishable from those in this case. Here lot 649 was adjacent to lot where defendants' residence stands. In defendants' deed the lots were **described as one parcel of land.** Lot 649 was used for ingress to the dwelling. The mere fact that it didn't have a fence around it does not mean that plaintiff could not under proper circumstances acquire an easement by prescription over it. See: **Glander v. Mendenhall, 39 Abs 104.**

Next defendants contend that any use of the path was **permissive** "and was so permitted from a desire to be neighborly," to quote from defendants' brief. The law says that a permissive use is not adverse and cannot ripen into an easement by prescription, no matter how long continued. (**Elster v. Springfield. 49 Oh St 82.**) Mere acquiescence, however, is not permission. (**Sting v. Rothalser, 82 Oh Ap 107.**)

By the weight of the evidence the Court is convinced that there was no "neighborly courtesy" or any conduct on the part of the defendants which might be interpreted as permission, express or implied, to the plaintiff or anyone else to use the path in question.

Finally the defendants contend that since sublot No. 649 was forfeited to the state in 1941 for the non-payment of taxes which had become delinquent beginning in 1926 and was sold at tax sale in 1944 to defendants' predecessors in interest, no prescriptive right can run or be claimed against the state and the sale to defendants' grantors gave them a new and perfect title free from all liens and encumbrances, if any, arising by reason of the use of the pathway.

Sec. 5762 GC (now §5723.12 R. C.) reads as follows:

"The county auditor, on making a sale of a tract of land to any person under §§5723.01 to 5723.19, inclusive, **R. C.**, shall give such a purchaser a certificate of sale. On producing or returning to the auditor the certificate of sale, the auditor, on payment to him by the purchaser, his heirs, or assigns, of the sum of one dollar and twenty-five cents, shall execute and deliver to such purchaser, his heirs, or assigns, a deed, **which deed shall be prima facie evidence** of title in the purchaser, his heirs, or assigns. When a tract of land has been duly forfeited to the state and sold under such sections, the conveyance of such real estate

by the auditor shall extinguish all previous title and **invest the purchaser with a new and perfect title, free from all liens and encumbrances**, except taxes and installments of special assessments and reassessments not due at the time of such sale, and **except such easements and covenants running with the land as were created prior to the time the taxes or assessments, for the nonpayment of which the land was forfeited, became due and payable.**" (Emphasis supplied.)

The court is satisfied that this statute was in effect at the time when the property was sold at tax sale to Walter and Marie Barrett defendants' predecessors in interest.

At this point a review of some of the facts is necessary. The subdivision here in question was laid out in 1908. From then until 1926 persons used a pathway over sublot 629 a considerable distance to the east of sublot 649 in going north and south on North Island. The taxes on sublot 649 became delinquent in 1926; the north lagoon was filled up in 1927 and thereafter and down to the present time the general public has used a pathway over the easterly end of lot 649. It is obvious that no easement by prescription was obtained over any portion of the land prior to the time when taxes became delinquent. The path was not then being used over lot 649 and the period of twenty one years of adverse use had not elapsed as to lot 629.

The case of **Mogren v. A. P. Investment Co., 73 Abs 188,** decided by the Court of Appeals of Cuyahoga County in 1956 bears directly upon the problem presented by these facts. The syllabus reads as follows:

1. "When the state takes possession of property by forfeiture less than twenty-one years from the date a claimed open, notorious and adverse possession of a right of way over such property came into being, such claimed right ends, since there can be no prescriptive right claimed against the State.

2. "Where plaintiff's petition, in part, seeks to quiet title to the use of a driveway against defendant, any defense to such claimed right of plaintiff does not create a new issue, and the Court of Appeals, upon appeal on questions of law and fact, may consider whether or not an alleged prescriptive right to the use of real property can survive a forfeiture of such property to the state, even though such defense was not presented to the trial court.

3. "A right to the use of the property in the subservient estate created by prescription, can not vest the owner of the dominant estate with any greater right in the use of the property of the subservient estate than that of the owner of such subservient estate.

4. "Where no easement has been created prior to the first date of tax delinquency, a purchaser of forfeited lands at auditor's sale, as provided by law, acquires a new and perfect title, free of any claim of an easement by prescription."

In the instant case it is clear that no easement was created prior to 1926, the first date of tax delinquency. Taking possession of the property by forfeiture in 1941 the state acquired it fourteen years after the adverse use of the public had begun and by the same token seven years before such adverse use had ripened into a prescriptive right. The court is convinced that §5762 **GC** is applicable and that by virtue of it the defendants, through their predecessors in interest, were vested with

524

a new and perfect title free from the encumbrance of any easement, since ownership by the state stopped the running of the time of adverse use.

For these reasons, in spite of the obvious hardship which plaintiff must endure by reason of the location of sublot 630, the relief for which she prays can not be granted and judgment must be rendered for the defendants.