COOKSTON, APPELLANT, v. BOX ET AL., APPELLEES.

532

(No. 24460—Decided June 19, 1959.)

*Mr. Raymond E. Cookston* and *Mr. Owen C. Neff*, for appellant.

*Messrs. Baskin, Kelley, Lausche & Heavilin*, for appellees.

KOVACHY, J. This is an appeal on questions of law and fact from a decree entered in favor of the defendants in the Common Pleas Court of Cuyahoga County and is before this court on the pleadings, transcript of evidence presented at the trial in Common Pleas Court, transcript of supplemental evidence taken before a special master commissioner in this court, and arguments and briefs of counsel.

Plaintiff, Dorothy H. Cookston, owns a cottage located on Sublot No. 630, a part of Mathews and Gilbert's Subdivision No. 6, Oakwood-On-The-Lake, in the city of Rocky River.

Defendants, Ernest C. Box and Grace Box, own Sublots Nos. 629 and 649 of the same subdivision. Sublot No. 629 is contiguous with plaintiff's lot.

Plaintiff claims a right to the use of a path over defendants' land by reason of:

1. An easement by prescription.
2. An easement by implication.
3. An easement by necessity.

She prays that a restraining order issue "restraining the defendants, their agents and servants from the erection and

maintenance of a fence or any similar obstruction on the southerly lot lines of Sublot No. 629 and No. 649, or at any other place whereby the free passage over and upon the pathway hereinbefore set forth is in any way obstructed or impeded * * *."

The tract of land originally known as Oakwood-On-The-Lake, comprising 64 acres, is located north of the Nickel Plate Railroad bridge and Lake Avenue in Rocky River and is bounded on the east by the west bank of the west branch of Rocky River and on the north by Lake Erie. A real estate development for home sites and docking facilities for pleasure boats started some 60 years ago. On August 15, 1907, the Frazier Realty Company, a corporation, obtained title to the entire tract, described by metes and bounds in the deed. The land included two small islands known as North Island and South Island. North Island was bounded on its east by Rocky River and on its north, west and south by a lagoon which connected with Rocky River at its north as well as its south end. The entire tract of land was subdivided by the Frazier Realty Company and the allotment recorded on Cuyahoga County Maps on March 30, 1908. North Island is divided into twelve sublots, each forty feet wide and extending generally west from Rocky River to what was the center line of the lagoon before the lagoon was filled in 1927. The accompanying map, a photostatic section of the record plat, defendants' Exhibit 1, portrays the area of the subdivision, pertinent here, before the lagoon was filled.

Abutting each North Island lot at the center line of the lagoon is another series of sublots extending westerly to Riverdale Drive, a generally north and south road leading to the Cleveland Yacht Club from Lake Avenue by way of Frazier Drive.

The evidence shows that North Island was used as a haven for pleasure boats before the allotment in 1908. A tenement house, known as The Terrace, had been built at or near the southern end of the island in which persons who owned boats lived, particularly during weekends when they frequented the islands for boating. Others slept on their boats. The only ingress and egress to and from the island from the mainland was over a foot bridge at the southern end of the island, and passage

up the island was by way of a path that ran along the eastern edge of the lagoon. By 1910 cottages had been built and boating facilities established north of Sublot No. 630 and this path was the recognized means of travel up and down North Island and was in general use by all having occasion so to do. A prospectus, plaintiff's Exhibit A-6, given to one of the early purchasers of a sublot discloses plans for a public highway over the eastern part of all sublots on North Island connecting with Riverdale Drive. This highway has never been built. We hold this prospectus admissible in evidence, it being part of the *res gestae* of the transaction. 21 Ohio Jurisprudence (2d), 385, Sections 376 and 377.

The Frazier Realty Company sold Sublot No. 629 to defendants' predecessor in title in 1910. Sublot No. 630 was sold to plaintiff's predecessor in title in 1913. In 1910, when Sublot No. 629 was severed from the Frazier Realty Company property, the path described above crossed the westerly-most edge of it and was the only means of ingress and egress for persons desiring to carry on activities on the island north of said sublot as well as for persons living north of it who desired to get to parts south of it on the island or to the mainland.

From the time the lagoon was filled, the sublots on the island have had a common border at what was the center line of the lagoon with the abutting sublots extending to Riverdale Drive. The accompanying map, a photostatic copy of plaintiff's Exhibit A, portrays the situation.

The parties agree that, after the lagoon was filled, the path which had traversed Sublot No. 629 was shifted to cross the easterly-most edge of Sublot No. 649. The evidence shows that owners, tradesmen, deliverymen, postmen, and the public in general used the way across Sublot No. 649 without hindrance or obstruction of any sort whatever from 1927 until 1955 when a fence was erected by the defendants along the southern border of Sublots Nos. 649 and 629, which action precipitated this lawsuit. The pathway described above runs in a northerly and southerly direction from one end to the other of North Island and continued as such from the beginning, with the lone exception of the passageway over defendants' land wherein the path

was shifted to traverse Sublot No. 649 in place of Sublot No. 629. The Frazier Realty Company sold Sublot No. 649 in 1916. The taxes on Sublot No. 649 became delinquent in 1926, and the lot was forfeited to the state in 1941 and was sold to defendants' predecessor in title by the county auditor in 1944. The defendants acquired Sublots Nos. 629 and 649 on February 4, 1949, from a common owner, Florence Newcomer, under one deed which described the two sublots as one parcel of land by metes and bounds.

The plaintiff acquired Sublot No. 630 in 1949. The map shows that plaintiff's Sublot No. 630 abuts Rocky River on the east but otherwise is landlocked since it is surrounded by Sublots Nos. 631, 647, 648, 649 and 629, which are owned by strangers. Ingress to it and egress from it, consequently, can only be had by traversing the property of others.

The defendants have a two-story dwelling, a shed and several fences on the portion of their land comprising Sublot No. 629. Sublot No. 649 has been graded and a driveway constructed leading from Sublot No. 629 to Riverdale Drive. The pathway over defendants' property, now in use by the plaintiff and the public generally, lies along the easterly-most border of Sublot No. 649 and is five feet wide. It is several inches west of the westerly line of Sublot No. 629.

Under the facts herein presented and the law, the plaintiff has not shown the right to an easement by prescription over the land of the defendants, either as to the path which had crossed Sublot No. 629 or the path now crossing Sublot No. 649.

I. Sublot No. 629 was severed from the original landowners in 1910. The pathway over the sublot was used by the predecessors in title of the plaintiff and the public in general until 1927, when the lagoon was filled. This at best constitutes an open, notorious and adverse use of a right of way for but seventeen years, which is four years short of the twenty-one years required by law to establish the right to an easement by prescription. *Pennsylvania Rd. Co.* v. *Donovan,* 111 Ohio St., 341, 145 N. E., 479; *Pavey* v. *Vance,* 56 Ohio St., 162, 46 N. E., 898.

II. The use of Sublot No. 649 as a means of travel up and down the island by the predecessors in title of the plaintiff and

the public started in 1927, when the path over Sublot No. 629 was changed to cross Sublot No. 649. This use still continues. However, Sublot No. 649 was forfeited to the state for nonpayment of taxes in 1941, taxes having become delinquent in 1926, and was sold to the defendants' predecessor in title in 1944. A prescriptive right in favor of the plaintiff had not been created prior to the time the taxes, for the nonpayment of which the land was forfeited, became due and payable, and, under Section 5723.12 of the Revised Code, a person who purchases land duly forfeited to the state for the nonpayment of taxes and sold by the auditor obtains a deed from the auditor which extinguishes all previous title and invests the purchaser ''with a new and perfect title, free from all liens and encumbrances, except taxes and installments of special assessments and reassessments not due at the time of such sale,'' and excepts only ''such easements and covenants running with the land as were created prior to the time the taxes or assessments, for the nonpayment of which the land was forfeited, became due and payable.'' *Mogren* v. *A. P. Investment Co.*, 102 Ohio App., 388, 131 N. E. (2d), 620.

And the use of such path since the auditor's sale in 1944 to the present time is insufficient from the point of time to create such right.

We believe, however, a totally different situation obtains with respect to the claim of an easement by implication and necessity.

The Supreme Court of Ohio in the case of *Ciski* v. *Wentworth*, 122 Ohio St., 487, 172 N. E., 276, sets out the basic elements necessary to establish an easement by implication. The first paragraph of the syllabus reads:

''While implied grants of easements are not favored, being in derogation of the rule that written instruments shall speak for themselves, the same may arise when the following elements appear: (1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that

the servitude shall be continuous as distinguished from a temporary or occasional use only.''

Unity of ownership existed when the Frazier Realty Company obtained title to this entire tract of land on August 15, 1907.

When Sublot No. 629 was severed from the estate of the Frazier Realty Company in 1910, the pathway had existed over that lot for some years. Such use, together with the topography of the island, must have made it manifest to the purchaser that this passageway was one of strict necessity for the proper use and beneficial enjoyment of the land retained by the grantor and one that was permanent and not temporary or occasional, since it constituted the only means of ingress and egress from the mainland to sublots on the island. The footbridge leading to the pathway from the mainland was such notice to him as well. We believe these factors also furnish evidence of the grantor's intention to reserve a right of way in favor of the land retained by it.

It was stated by the Supreme Court of Ohio in *Frate* v. *Rimenik,* 115 Ohio St., 11, 152 N. E., 14, in paragraph two of the syllabus as follows:

''Easements and servitudes created by a common owner of lands, which are plainly visible and from the character of which it may be fairly presumed that he intended their preservation as necessary to the proper, convenient, and reasonable enjoyment of the property, become, when the lands are divided and pass into other hands, permanent appurtenances thereto, and neither the owner of the dominant or of the servient portions of the land has power to adversely interfere with their proper use and enjoyment.''

See *Meredith* v. *Frank,* 56 Ohio St., 479, 47 N. E., 656; *Baker* v. *Rice,* 56 Ohio St., 463, 47 N. E., 653; *Freiden* v. *Western Bank & Trust Co.,* 72 Ohio App., 471, 50 N. E. (2d), 369, paragraph three of the syllabus; *Baltimore & Ohio Rd. Co.* v. *Gilmore,* 19 Ohio App., 489; 9 Ruling Case Law, 765, Section 28; and 18 Ohio Jurisprudence (2d), 564, Section 35.

It is our view that the evidence clearly and convincingly shows that an implied easement from an existing use and as a

way of necessity was established in favor of Sublot No. 630 upon the severance of the ownership of Sublot No. 629. The Supreme Court of Ohio stated in the fourth paragraph of the syllabus of *Trattar* v. *Rausch,* 154 Ohio St., 286, 95 N. E. (2d), 685, as follows:

"An implied easement is based upon the theory that whenever one conveys property he includes in the conveyance whatever is necessary for its beneficial use and enjoyment and retains whatever is necessary for the use and enjoyment of the land retained."

We hold, therefore, that the title to Sublot No. 630 includes an easement by implication and necessity as a permanent appurtenance thereto and that the plaintiff, as the owner of the dominant estate, is vested with the beneficial use and reasonable enjoyment of a pathway over Sublot No. 629, to which the latter is subservient, and that the defendants, as the owners of the servient estate, are required by law to permit the plaintiff and others having the right and privilege to traverse thereover to exercise this right without interference, hindrance or obstruction.

The pathway currently in use, however, crosses that part of defendants' property designated as Sublot No. 649. This passageway is just as convenient for those using it as the old and is unquestionably a more desirable location for the defendants than the old way in view of the present arrangement of buildings and fences. It seems, therefore, that no useful purpose would be served by restoring the original way and that the present way should be allowed to stand. This court, accordingly, under the maxim that he who seeks equity must do equity, decrees that the present location of the path continue as a way for the exercise of the easement herein declared. This accords with the third paragraph of the syllabus of *A. S. D. Securities, Inc.,* v. *J. H. Bellows Co.,* 48 Ohio App., 101, 192 N. E., 472, which holds:

"Where a right of way across land is held to exist by way of necessity or as an implied easement, and owner of the dominant estate seeks in equity to protect his right of way by injunction, the court, under the maxim that he who seeks equity must do equity, may in granting the relief, decree that the owner of

the servient land may move such right of way at his convenience so long as such access shall be as reasonably convenient to the dominant land as the one then in existence."

We find no merit to defendants' claim that the plaintiff has a means of egress and ingress by way of water to and from her land, since the evidence conclusively shows that Rocky River is only used as an outlet to Lake Erie for pleasure crafts, with no facilities or transportation whatever in existence for carrying on the ordinary and necessary activities of life from and to the land in question by water.

*Decree for plaintiff.*

HURD, P. J., and SKEEL, J., concur.