C. D. STOCK, Appellant
(Defendant below),

v.

Joseph M. ROEBLING, Appellee
(Plaintiff below).

No. 3781.

Supreme Court of Wyoming.

Oct. 16, 1969.

vate easement over defendant's ranch land, which would permit him and others to drive cattle to and from summer range in the Shoshone National Forest and to enjoin defendant from interfering with such easement. The defendant denied and counterclaimed, demanding that title in the land described in the complaint be quieted in him.

Trial resulted in the court's finding against plaintiff as to any public highway or easement but that he and his predecessors in interest had, for more than ten years immediately preceding the commencement of the action, openly, notoriously, hostilely, visibly, exclusively, continuously, without interruption, and peaceably under claim of right adversely to defendant and his predecessor in interest with their knowledge and acquiescence, trailed 450 head of grown cattle and their calves across the defendant's land en route to and from summer grazing and specifically that such use by plaintiff and his predecessors was not permissive. Accordingly, the court denied defendant's counterclaim and entered a judgment granting easement across a portion of defendant's land and enjoined against plaintiff's being disturbed in the decreed rights. From this judgment defendant has appealed, contending that the use of the land by plaintiff and his predecessors in interest was permissive and not adverse, not continuous and uninterrupted, and not exclusive within the meaning of the law as applied to prescriptive easements.

The background, including the characteristics of the land over which the right-of-way was sought and the nature of the activities in which the residents of the area are engaged, are not only interesting but also important to the cause.

Lathrop, Lathrop & Uchner, David D. Uchner, and Carl L. Lathrop, Cheyenne, for appellant.

Harold M. Johnson, Rawlins, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Plaintiff, Joseph M. Roebling, on July 5, 1967, instituted suit against C. D. Stock, seeking to establish both a public and pri-Plaintiff's Bear Creek Ranch lies approximately ten miles east of Dubois, Wyoming. His forest permit allows him to graze 450 cows with calves and a few bulls on an allotment in the Shoshone National Forest about twelve miles south and west of Dubois. He is allowed by the Forest Service to put his cattle onto the allotment

around the first of July and to keep them there until October 10. The cattle are trailed across Roebling's own ranch, other private property, and Bureau of Land Management land to Dubois. They are then taken through the west edge of that town, turned south to cross the Wind River, going up what is called the Little Warm Springs Trail, first across the Albright Ranch and then Bureau of Land Management land. Stock's deeded land is adjacent to this BLM land, and he has a north-south divisional fence running between it and his land. This fence terminates at the edge of a very steep precipice, some one to two hundred yards south of a gate in the north-south fence known as Black Gate. Because of the rugged cliff the fence could not be carried to the forest line. The fence meanders toward the south and arrives on the forest line approximately four hundred yards west of the north-south line in which the Black Gate is located. This left between the line of the meandering fence and the southern property line of Stock's deeded land a portion which was fenced on the north but the fence on the south was partly in a state of disrepair. The Bear Creek cattle were trailed through the Black Gate and across approximately 1,320 feet of Stock's land before entering the national forest, the topography making it impossible to move them further south. (See the appendix.)

The law applicable to the controversy does not appear to be seriously in dispute, the defendant, citing 3 Powell, Law of Real Property § 412 (1967), says that in considering easement by prescription the authorities on real property are in agreement that the right is created by the use of land, provided such use is (1) adverse, (2) continuous and uninterrupted, and (3) for the period of prescription,[1] and contends that in order to prevail the plaintiff must prove all three of these essential elements. Plaintiff neither directly nor indirectly disputes

this contention but maintains that the evidence shows the use of the land as a stock driveway to be adverse, nonpermissive, continuous and uninterrupted, as well as exclusive.

■ Aside from a diverse interpretation of the facts by the litigants, their basic disagreement in the appeal stems from defendant's assertion that Roebling's claimed prescriptive right was on land which is "unenclosed, wild, rough, and open range country." This contention is sharply challenged by plaintiff, and we think with cause. Frankly, we are at a loss to understand how it could reasonably be contended that the land over which the prescribed right is sought is unenclosed. Not only does the testimony fail to show this but to the contrary at numerous points reveals without contradiction that there is and has been for many years a fence around all of defendant's land and additionally Stock has placed a division fence which runs in a generally east-west direction and separates the main part of his ranch from a portion containing the area used as the driveway. Both photographs and maps introduced in evidence by plaintiff show the land to be enclosed. Consequently, any cited authority arising from controversies concerning prescriptive rights over unenclosed land is not pertinent to the matter before us and of little or no value.

The case turns upon the evidence which was adduced and the interpretation which was permissible under the circumstances. Much of the testimony in the record is at best peripheral to the issue before us since it relates to the activities of ranchers other than the plaintiff. Narrowing the matter to plaintiff and his predecessor, we find Roebling's testimony unequivocal in saying that his cattle had been taken through the Black Gate passageway across Stock's land beginning in 1962 through 1966 without any interference by Stock. Roebling's foreman, Robert R. Schanno, who had worked for

1. Section 1–13, W.S.1957, provides, "An action for the recovery of the title or possession of lands, tenements or hereditaments can only be brought within ten years after the cause of such action accrues."

the Bear Creek Ranch 1958–1968, said he was present each of these years and that the Bear Creek cattle were taken through the passageway on Stock's land and that there was no interference by Stock during that period. Both Roebling and his real estate agent at the time of his purchase of the ranch testified that each had been assured by W. W. Ryker, the Bear Creek Ranch foreman, that the ranch had a right-of-way up to the forest permit.

Roebling's predecessor, Dyke, testified that with the exception of the year 1946 or 1947 when the cattle were on a leased ranch he had used the trail over Stock's land from the late 1940's through 1961, the year he sold the ranch; that he had never sought permission from Stock or his agents to drive his cattle through the Black Gate and over Stock's land as he always understood that it was an established right-of-way; and that during the time he owned the ranch, Ryker (who died October 14, 1965) was his manager. According to Dyke, no one ever forbade him or his agents to drive his cattle to and from the forest through the Black Gate and if this had happened it would have been reported to him by Ryker. It was his impression that Stock and his foreman, Ryker, were not "too friendly."

Clifford Bullock, who had worked for Stock ten years, first being employed in 1949 and remaining for about six years and then part-time in 1967 and 1968, said that one year, he believed 1950, a herd of cattle was brought in by the Bear Creek Ranch and left on Stock's land for three days, that he saw them there, and "gave them notice" by registered letter.[2]

Stock, who purchased his deeded land in 1933, said at that time relatively few cattle were driven to the forest over the trail. He said he was familiar with the fact that Roebling had driven his cattle through the Black Gate and over Stock's land onto the forest—that the foreman had threatened to shoot his way through. He said he and Dyke, the previous owner of the Bear Creek Ranch, "had an understanding." He

knew that they had driven cattle through the Black Gate and over his land in 1966 and in 1965, did not remember about the year 1964, but said that for several years they did not drive over his land. He did not know the years but said it was a short time before Ryker died. He said Dyke drove cattle to the forest through that way while he owned the place but Stock was not certain whether it was every year or not and that "one year [1951 or 1952] we sent him a registered letter not to drive over the patented land," Ryker at that time calling on him personally and being told, "I will let you go through, but it is not a permanent right of way that I am giving you, but I want you to take care of your cattle and keep them out of my fall pasture * * * if anything happens I want to reserve the right to cancel your right of way through my patented land."

On June 16, 1967, Stock sent the following registered letter (Plaintiff's Exhibit 11):

"Bear Creek Ranch

Dubois, Wyoming

"Dear Sir:

"This is to notify you that I am not allowing you to tresspass [sic] or drive your cattle over my patented land to the Forest, due to the expense of building fenses [sic] and riders to protect my Fall pasture.

"Last year I had to truck hay to Dubois on account of your cattle grazing my fall pasture off. So I am trying to illiminate [sic] this expense."

Stock testified that up to the time he wrote "this letter" he and the other ranchers in the Dubois area would meet and his own cattle would be driven in through the Black Gate along with the Bear Creek cattle and the cattle from the other ranches. However, Schanno testified that from 1958 to 1967 when he drove the Bear Creek cattle into the forest Stock was not present and that he did not see any of Stock's cattle

---

2. Neither copy of the letter nor proof of mailing was submitted.

being driven through the Black Gate with the Bear Creek cattle.

 Counsel seemingly relies on the granting of permission to Ryker as nullifying any adverse use. Of course, consent by the landowner, if proved, would have been sufficient to show the use not to have been adverse and thus prevent a prescriptive right from accruing. However, the evidence tending to show the owner's consent was rejected and that to the contrary accepted, and it is settled beyond controversy that the trial court is the sole determiner of credibility of witnesses. We must assume that evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. Severin v. Hayes, Wyo., 372 P.2d 1017, 1020.

 There was without question sufficient testimony before the trial court to show that Roebling and Dyke used the land in question twice each year as a driveway for cattle during the ten-year period prior to 1967, that the use was continuous and uninterrupted, without the consent of the landowner, and that the use was exclusive —as that term was defined in White v. Wheatland Irrigation District, Wyo., 413 P.2d 252, 260. As indicated, the trial court might by giving credence to Stock's testimony have concluded differently, but that matter is not for determination here on appeal. There is, however, another aspect which causes us to question the nature of the judgment as it stands. Due consideration of the rights of both parties is requisite in equity suits of this nature. Quinn v. Stone, 75 Idaho 243, 270 P.2d 825, 828; Cookston v. Box, 109 Ohio App. 531, 160 N.E.2d 327, 333. In Haines v. Galles, 76 Wyo. 411, 303 P.2d 1004, 1008, where the area to be traveled was an improved roadway, we indicated the necessity of delineating the rights and duties of the parties.

 The judgment of the trial court granting the plaintiff the easement for driving the cattle across defendant's land and enjoining defendant from interfering with the easement is affirmed, but the court is directed to reopen the cause, take further evidence if necessary, and amend the judgment to provide more definitively the course of the easement, the time which may be consumed for each drive, and the care which must be exercised over the animals during the times they are driven over defendant's property.

Remanded with instructions.

APPENDIX