Camp *v.* Whitman.

CLARA CAMP

*v.*

GEORGIANNA F. WHITMAN and husband.

Defendant's lot was bounded on the north by A street, and on the west by a
-park, west of which was B street. She conveyed the rear end of the lot to.
.complainant, who purchased, with defendant's knowledge, for the purpose of
building a residence thereon. Defendant's deed to complainant called for B
street as the westerly boundary of the lot conveyed; but the measurements
and calls limited the westerly boundary to the park, and the city which owned
-the park denied complainant access across it to B street by carriage. Com-
plainant's lot was enclosed on other sides by the lands of others.—*Held,* that
-the complainant was entitled to a carriageway across defendant's land to the
street, and that notwithstanding a footway along the easterly edge of the park
-to A street.

Final hearing on bill, answer and proofs in open court.

The parties hereto are owners of adjoining lots of land, and
-the object of the bill is to establish a right in the complainant,
.as such owner, to a carriage and wagonway from her lot across
the lot of the defendant to the public highway, and to have the
same designated upon the ground.

The facts are that, at and prior to the 1st of March, 1889, the
.defendant Mrs. Whitman was the owner of a plot of land situate
in Bloomfield, Essex county, New Jersey, on the north side of
Belleville avenue, having a frontage on said street of one hun-
dred and forty-seven feet and six inches, and a depth of about
-two hundred and thirty-seven feet. On its easterly and northerly
sides it was bounded by lands owned by other parties, and on its
westerly side by a strip of land about fifty-five feet in width,
.owned by the township of Bloomfield, and maintained as a public
park, and which, in turn, is bounded on the west by Broad street,
formerly known as the Paterson road. Between this park strip
.and the traveled way of Board street is a horse railroad track.
·On the Belleville avenue front of said lot defendant's house was

situate.   There were no improvements on the northerly or rear
part of the lot, but it was used as a backyard or garden.   On the
1st of March, 1889, by deed of that date, the defendants con-
veyed to the complainant a lot, taken from the rear of the whole
lot, with a frontage of sixty feet and eleven one-hundredths of a
foot upon the park and a depth of about one hundred and thirty
feet.   The description contained in the deed is as follows:

"Beginning in the easterly line of Broad street at a point therein distant
176 feet and 29-100 of a foot northerly from the northerly line of Belleville·
avenue, and running from thence (1) along the easterly line of Broad street
north, 18 degrees 55 min. E., 60 feet and 11-100 of a foot to the line of lands
of Nathaniel H. Baldwin; thence (2) along this line south, 74 deg. 50 min.
E., 126 feet and 90-100 of a foot to the line of lands of Albert J. Philbrick;
thence (3) along his line south, 13 deg. 52 min. W., 60 feet; thence (4) along·
line of said Georgianna F. Whitman N., 74 deg. 47 min. W., 132 feet and
18-100 of a foot to Broad street and place of beginning."

It will be observed that this deed calls for its westerly bound-
ary upon Broad street.   The same call by the name of the Pater-
son road is found in the conveyance under which Mrs. Whitman
obtained title to the whole plot, but the measurement, calls and
enclosure considered together, limit the westerly boundary by the·
easterly edge of the strip so used for a park.   The circumstances·
indicate that this call for a westerly boundary on Broad street·
had its origin in the supposition that all the land between it and
the westerly side of Broad street was properly a part of Broad
street.   The complainant purchased her lot for the purpose of
erecting thereon a residence, and such purpose was known to the·
defendants when they made the conveyance.   She proceeded at
once to erect a comfortable and rather expensive dwelling upon·
it.   The contractors hauled the material therefor across the park·
strip, without objection on the part of the township authorities.
After this the complainant proceeded to lay out a driveway from
the westerly side or front of her lot across the park strip to·
Broad street, but was stopped in so doing by the township·
authorities, and it was admitted by the answer, and at the hear-
ing, that they had power and authority to prevent, and actually
do prevent, any nearer approach to her premises by wheeled⸗

vehicles than the easterly side of Broad street proper. Some proof was offered that many years ago earth and gravel were placed on the park strip along the westerly side of defendant's lot, from Belleville avenue northward toward the rear thereof, for the purpose of making a sidewalk, and it appeared that foot-travelers were in the habit of passing along the easterly side of the park strip from Belleville avenue northward, and from the parts north of the complainant's property southward to Belleville avenue.

Immediately to the north of the complainant's lot, at and prior to the date of the conveyance, were two other houses facing on the park strip, each of which had and enjoyed a driveway for carriages across the same to Broad street, but the park strip opposite these houses was narrower than opposite the complainant's lot, being wedge-shaped, with the edge of the wedge to the north.

*Mr. Frederick G. Burnham,* for the complainant.

*Mr. Halsey M. Barrett,* for the defendants.

PITNEY, V. C.

Complainant rests her right, *first,* upon the familiar doctrine of a way of necessity, and, *second,* upon the affirmation in her deed that the lot so conveyed did front upon Broad street.

The defendant insists that the facts show a present footway along the easterly edge of the park strip from Belleville avenue to the complainant's land, and that such a way satisfies the element of necessity. To this complainant replies that, under the circumstances, she is entitled to a right of way for wheeled vehicles, and further that the footway is not established in law by the evidence.

That the complainant is entitled to some kind of a way for reaching the highway from her lot is perfectly clear. It was suggested rather than argued by the defendant that, as both parties contracted upon the mistaken supposition that the park strip was a part of Broad street, and that complainant would get

access to the street across it, and as both parties were mistaken, the complainant ought not to visit the result of that mistake upon the defendant; that the actual situation was as well known to the complainant as to the defendant, and hence no equity arises, and no grant of a right of way of necessity should be presumed. I am unable to adopt that view. The defendant is responsible for the language in the deed, which bounded the complainant's land upon Broad street, and the use of that language was an affirmation upon the part of the defendant that the complainant's lot did actually bound upon Broad street; hence it seems to me that the equities upon that score are not equal, but that the complainant's standing is superior. I think her right to a way by implied grant is quite as full and complete as it would be if there had been no misapprehension as to the character of the park strip. The only questions are—*first*, whether the necessity which, according to the authorities, is the foundation of the implied grant, is satisfied by the alleged footway along the east side of the park strip; and if it be, then, *second*, whether such a footway exists.

The case shows quite clearly, and it was very properly admitted at the hearing, that the defendants knew of the purpose for which the lot was to be used by the complainant. In fact, it was of no value for any other purpose. The character of the improvements put upon it are such as seem to me to preclude the idea that either party could have contemplated that a footway was all that was required for the use of the house.

Now, the law implies the grant, in order to carry out the intention of the parties, which, in a sense like the present, is that the grantee shall have the complete and beneficial use of the thing granted, in the manner contemplated by the parties at the time.

Sergeant Williams, in his note to *Pomfret* v. *Ricroft, 1 Saund.* *323 note 6,* suggests that the name—way of necessity—is correct " in a partial sense, because the way is a necessary incident to the grant." And again he says:

" For there seems to be no difference where a thing is granted by *express words,* and where, by *operation of law,* it pass as

Camp *v.* Whitman.

incident to the grant. In the latter case, it would be a superfluous and inoperative clause in the deed to convey the incident by express words of the grant, being only *expressio eorum quæ tacite insunt.* Therefore, in both cases the grant is the foundation of the title."

But, admitting that the grant of a way is a necessary incident to the conveyance only where the way is necessary to the enjoyment of the thing conveyed, and that the test of such necessity is that the land conveyed is land-locked and does not touch a public highway, still I can find no authority for the position that a mere footway along a park is a public highway, and none such was pointed out by counsel.

A public highway is one over and upon which the public have a right to pass with cattle and wheeled vehicles. A sidewalk for foot-travelers is a part of a highway, but does not itself constitute one, and never has, so far as I know, within the history of the common law. Ordinarily, in these cases, the right of way implied is one for all purposes, and the cases where it has been restricted are rare and of recent date.

In *Gayford* v. *Moffat, 4 L. R. Ch. App. 133 (1868),* the question arose as to the character and extent of a right of way of necessity granted by implication with a lease. Lord Cairns says (at *p. 135*): "Immediately after this lease was granted, this tenant, occupying the inner close, became entitled to a way of necessity through the outer close, *and that way must be a way suitable to the business to be carried on on the premises demised,* namely, the business of a wine and spirit merchant. This is the position in which the tenant stood after the lease was granted and is the position in which he now stands."

This, it is to be observed, was a case of implied *grant* by the *grantor* to the *grantee,* and not of a reservation, or, as it is sometimes called, a regrant by the grantee to the grantor. The question as to the right and extent of a right of way of necessity *reserved* by implication by the grantor, or *regranted* by the grantee, was elaborately discussed in the later case of *Corporation of London* v. *Riggs, L. R. 13 Ch. Div. 798 (1880).* There the predecessor in title of the defendant, being the owner of a con-

siderable tract of land situate in Epping Forest, in the easterly part of London, had conveyed it to the city of London, reserving from thereout a small close called " Barn Hoppet," containing about two acres. At the time of the conveyance " Barn Hoppet " was used for agricultural purposes. Subsequently the defendant, who had become the owner of " Barn Hoppet," made preparations for the erection upon it of a house, and other buildings for the sale of refreshments to the public, and thereby to attract a large number of people who would necessarily cross and recross the lands conveyed to the complainant, and the question was whether or not the right of way reserved by necessity was confined to agricultural purposes only, or whether it was a general right of way for all purposes. Sir George Jessel, master of the rolls, held, hesitatingly, quoting Lord Cairns in *Gayford* v. *Moffat*, that the right of way was limited to the purposes for which the lands were used at the time of the grant. This case is relied upon by the defendants' counsel, and, if applied in its letter, would confine the implied grant of a right of way here to such a way as was necessary for the enjoyment of the premises as a vacant lot. But this is not the spirit of the opinion above referred to, which is, that the right of way shall be such as is necessary for the use of the premises in the manner contemplated by the parties at the time of the conveyance.

Sir George Jessel (at *p. 805*) uses this language: " The real question I have to decide is this—whether, on a grant of land wholly surrounding a close, the implied grant, or regrant, of a right of way by the grantee to the grantor to enable him to get to the reserved, or excepted, or enclosed close, is a grant of a general right of way for all purposes, or only a grant of a right of way for the purpose of the enjoyment of the reserved or excepted close in its then state.

" There is, as I have said, no distinct authority on the question. It seems to me to have been laid down in very early times—and I have looked into a great number of cases, and among others several black-letter cases—that the right to a way of necessity is an exception to the ordinary rule that a man shall not derogate from his own grant, and that the man who grants the sur-

rounding land is in very much the same position as regards the right of way to the reserved close as if he had granted the close, retaining the surrounding land. In both cases there is what is called a way of necessity; and the way of necessity, according to the old rules of pleading, must have been pleaded as a grant, or, where the close is reserved, as it is here, as a regrant."

And further on he says (at *p. 806*): "Well, now, if we try the case on principle—treating this right of way as an exception to the rule—ought it to be treated as a larger exception than the necessity of the case warrants? That, of course, brings us back to the question, What does the necessity of the case require? The object of implying the regrant, as stated by the older judges, was that if you did not give the owner of the reserved close some right of way or other, he could neither use nor occupy the reserved close, nor derive any benefit from it. But what is the extent of the benefit he is to have from it? Is he entitled to say, I have reserved to myself more than that which enables me to enjoy it as it is at the time of the grant? And if that is the true rule, that he is not to have more than necessity requires, as distinguished from what convenience may require, it appears to me that the right of way must be limited to that which is necessary at the time of the grant; that is, he is supposed to take a regrant to himself of such a right of way as will enable him to enjoy the reserved thing as it is."

And again he says (at *p. 807*): "I may be met by the objection that a way of necessity must mean something more than what I have stated, because, where the grant is of the enclosed piece, the grantee is entitled to the use of the land for all purposes, and should, therefore, be entitled to a right of way commensurate with his right of enjoyment. But there again the grantee has not taken from the grantor any express grant of a right of way; and all he can be entitled to ask is a right to enable him to enjoy the property granted to him as it was granted to him. It does not appear to me that the grant of the property gives any greater right. But even if it did, the principle applicable to the grantee is not quite the same as the principle applicable to the grantor; and it might be that the grantee obtains a

larger way of necessity—though I do not think he does—than the grantor does under the implied grant."

These two cases, as before remarked, go no farther, as I interpret them, than to hold that the way granted or reserved is to be confined to the uses presumably in the contemplation of the parties at the date of the conveyance. And as to the latter of them, I cannot but think that Sir George Jessel was unconsciously, but in my judgment properly, influenced by the circumstance that the grantor there was in fact derogating from his own grant, and, for that reason, he should be subject to a stricter rule than that applicable here. Thus, if the prior owner had conveyed "Barn Hoppet" to the city of London, knowing that it was acquired for the purpose of erecting on it some municipal building, I am satisfied the result would have been different and a grant to the city of London of a way suitable for such use across the remaining lands reserved by the owner would have been presumed. An examination of the cases cited in *Gale & W. Easem. p. *74,* shows that the courts had difficulty at first in presuming anything in favor of a grantor against his own grant. See note to *1 Wms. Saund. *323;* also, *Suffield* v. *Brown, 4 De G., J. & S. 185,* and other cases cited in *Tooth* v. *Bryce, 5 Dick. Ch. Rep. 589.*

*Denne* v. *Light, 3 Jur.* (*N. S.*) *627, 26 L. J. Ch. 459,* was a suit by vendor against vendee for specific performance of a written contract to convey a small piece of land situate upon Ham-Common not touching any highway. Nothing was said in the contract about any right of way or access to the lot. Vendee's solicitor required of the vendor to show a right of way for carriages and carts, which she was unable to do, and for that reason the court refused specific performance.

Turner, L. J., said (*26 L. J. 464, 3 Jur.* (*N. S.*) *628*) that he thought it would be repugnant to the principles of a court of equity to decree specific performance of a contract for a sale of any land to which there was no right of way for carts and carriages; to do so would amount to making a man buy that which he could by no possibility enjoy. This case is significant as to what is considered sufficient to satisfy the necessity of access.

For these reasons, I come to the conclusion that complainant is entitled to have a carriageway over the defendants' lot from Belleville avenue to her lot, even though there be a footway along the park strip from the same street, as alleged by the defendant. Upon that question I express no opinion.

Unless the parties shall agree upon the route and width of the carriageway, there must be a reference to a master to determine it.

Complainant is entitled to costs.