A. GORDON ADAMS AND CHRISTINE H. ADAMS, PLAINTIFFS-RESPONDENTS, v. ARTHUR J. CALE, ARTHUR CALE, Jr., AND MARIE M. CALE, INDIVIDUALLY AND AS PARTNERS TRADING UNDER THE NAME AND STYLE OF CALE HOTEL COMPANY, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued November 18, 1957—Decided December 16, 1957.

120

122

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Henry H. Wiley* argued the cause for defendants-appellants (*Messrs. Berry, Whitson & Berry,* attorneys; *Mr. Wiley,* of counsel).

*Mr. Theodore McC. Marsh* argued the cause for plaintiffs-respondents (*Messrs. Riker, Emery & Danzig,* attorneys; *Mr. Marsh,* of counsel).

The opinion of the court was delivered by
FREUND, J. A. D. The defendants appeal from a summary judgment which declared that the defendants have

no right, title and interest in and to the plaintiffs' lands and restrained their trespass across plaintiffs' lands.

The Sea Shore Company (hereinafter referred to as Sea Shore) in 1881 and prior thereto was the common owner of a large tract of undeveloped land in the Borough of Mantoloking, New Jersey, which extended from the Atlantic Ocean to Barnegat Bay. The tract included the lands owned by the plaintiffs and defendants as well as other lands lying between Princeton Street on the north and Albertson Street on the south. The main street running north and south and generally parallel with the waterfront, both then and now, is Ocean Avenue.

By deed of 1881, Sea Shore conveyed to the Philadelphia and Long Branch Railway Company a right of way which divided lengthwise the property owned by Sea Shore lying west of Ocean Avenue for a considerable distance north and south of the property here in question. The property lies in a block fronting on Barnegat Bay and between Princeton Avenue on the north and what is now Albertson Street on the south. The deed contained a clause that the lands were to be used for railroad purposes only and when they ceased being used for such purposes the land would revert to the grantor. In 1949, by appropriate proceedings, the railroad right of way was formally abandoned for railroad purposes. By deed of May 26, 1952 Sea Shore, having again acquired the title by reversion, conveyed to the plaintiffs the lots described as 8, 9 and 10 in block 47 on the Tax Map of the Borough of Mantoloking, a segment of the former right of way, 66 feet by 100 feet in dimensions.

The defendants are the owners of lots 8, 9 and 10 in block 37 fronting on Ocean Avenue which are contiguous to and east of plaintiffs' lands and also of lot 8 in block 38 which fronts on Barnegat Bay and is contiguous to and west of plaintiffs' lands. The defendants claim an easement of ingress and egress from lot 8 in block 37 over the plaintiffs' lot 8 in block 47 to lot 8 in block 38. The purpose is to afford access to Barnegat Bay from defendants' hotel property east of Ocean Avenue, which property also has access to the

Atlantic Ocean. They argue that they are entitled to an easement by implied reservation, an easement by way of necessity and to a statutory passageway across the former railroad right of way now owned by the plaintiffs.

Disposition of this appeal requires that we now trace the title of defendants' lots as conveyed by Sea Shore. A portion of a map exhibit received in evidence and shown here will help to identify the various mentioned properties. The descriptions in the conveyances to which we shall refer are not by the lot and block numbers here referred to which we use for simplicity of identification.

By deed dated May 27, 1889 Sea Shore conveyed to Benjamin Albertson lots 8 in blocks 37 and 38. It specifically excluded the land conveyed to the railroad and the land proposed for the extension of Ocean Avenue which at that time did not extend southerly to these lots. The deed description monuments Princeton Avenue. At that time Albertson Street, which now runs east-west abutting lots 10 in blocks 38, 47 and 37 on the south, did not exist. On the same day lots 9 and 10 in the same blocks were conveyed by the same grantor to Jennie R. Albertson, wife of Benjamin Albertson. On March 11, 1901 the Albertsons conveyed all the lands that had been conveyed to them by the two prior deeds to William R. Albertson. By this deed lots 8, 9 and 10 in block 38 acquired a common ownership in William R. Albertson and the deed description refers to Princeton Avenue, but makes no reference to Albertson Street.

On May 5, 1904, by *mesne* conveyances, the title of William R. Albertson in the foregoing premises was conveyed to J. Otto Rhome, and on the same day Rhome conveyed them to Anna L. Albertson. By this deed Anna L. Albertson became the common owner of lots 8, 9 and 10 in blocks 37 and 38, which includes plaintiffs' Barnegat Bay front lot here in question and the two lots lying between it and the northerly side of Albertson Street, although the deed contains no reference to Albertson Street. By deed of May 10, 1922 Anna L. Albertson conveyed to Curles J. Hulse and Ollie M. Hulse the waterfront property, being lots 8, 9 and 10 of block 38. This description refers specifically to Albertson Street as the boundary line of the three lots. By the foregoing deed Hulse and his wife became the common owners of lot 8 in block 38 and of the two adjacent lots, the southerly lot being bounded by Albertson Street, thus giving lot 8, block 38, access to a public street. On March 25, 1924 Curles J. Hulse and his wife conveyed to Beacon Hotel Company only lot 8 in block 38, resulting in an isolation from any street of the lot now in question, and retaining lots 9 and 10 in block 38. On the same day Curles J. Hulse and his wife conveyed to Beacon Hotel Com-

pany lots 8, 9 and 10 in blocks 36 and 37. On August 17, 1925 lots 9 and 10 in block 38, the remaining waterfront property adjacent to lot 8 in block 38, was conveyed by Hulse and his wife to Jessie H. Seabury. Lot 10 bounds on Albertson Street. The Beacon Hotel property, lot 8 in block 38 and lots 8, 9 and 10 in block 37, was reconveyed to Hulse in 1930, and the Hulses on November 17, 1944 conveyed the same property to the defendants, Cale Hotel Company.

Subsequent to defendants' making answers to plaintiffs' interrogatories, the plaintiffs applied for a summary judgment. After extended argument on behalf of the respective litigants, judgment was awarded to the plaintiffs on the grounds that the plaintiffs were the owners in fee of their property, lots 8, 9 and 10 in block 47, and that defendants "have no easement nor right of way by prescription, necessity or otherwise to cross over or go upon plaintiffs' said lands and premises in any manner or to otherwise utilize the same for access to their premises or for any other purpose." Defendants were enjoined "from crossing over or going upon or trespassing" upon the premises owned by the plaintiffs.

We proceed to a consideration of each of the theories of easement advanced by defendants.

The argument that there was created an implied easement in favor of the defendants across the former railroad right of way is based on the supposed intention of the parties when in 1881 the right of way was conveyed to the railroad. In 1889, when lot 8 in blocks 36, 37 and 38 was conveyed to Albertson, Princeton Avenue had been opened and Ocean Avenue had been extended as far as lot 8. There is no indication of Albertson Street until it appears on the Segoine map of 1913 which was received in evidence. The first deed reference to "Albertson Avenue" (sic) in the submitted record appears in the May 10, 1922 conveyance of Albertson to Hulse. The maps do not show any street to the west of what was formerly the railroad right of way between the present Albertson Street and Princeton Avenue. There is

no street at present that provides access to the lots in block 38 except the corner lots that border on Princeton Avenue and Albertson Street.

Defendants argue that it must have been obvious to all concerned that in order to gain access to defendants' lot 8 fronting on Barnegat Bay, it could only be had by crossing the railroad tract. They say it was never intended that in order to make use of lot 8 they either had to go via boat from the foot of Princeton Avenue on Barnegat Bay or cross over all the lots in block 38 west of the railroad from Princeton Avenue until they reached their particular lot facing on Barnegat Bay. The argument proceeds that in 1881, when the railroad acquired the right of way, it did so with all the benefits and burdens which appeared at the time of the sale to belong to it in relation to the property retained by Sea Shore. However, the record does not disclose when this area was laid out in lots and blocks as they presently exist. It is undisputed that it was not laid out in lots in 1881 when the right of way was granted. The deed of 1889 to Benjamin Albertson, excepting Ocean Avenue and the railroad right of way, tends to confirm the intent of at least the grantor to use the property as lots from Ocean Avenue to both bodies of water at that time. But we cannot assume such intent existed in 1881. It is noted that the deed from Sea Shore to the railroad contained a covenant against the acts of the grantor.

The conveyance of 1881 by Sea Shore to the railroad from which the title to the plaintiffs' lots is derived was prior to the conveyance from which the defendants derive their title by eight years. The rights of the defendants, if any, arose when in 1881 the unity of title in Sea Shore ceased, and therefore were created by, or arose as a result of, the conveyance to the railroad company in 1881. *Kelly v. Dunning,* 43 N. J. Eq. 62 (*Ch.* 1887), affirmed *Dunning v. Kelly,* 46 N. J. Eq. 605 (*E. & A.* 1890) ; *Kling v. Ghilarducci,* 3 Ill. 2d 454, 121 N. E. 2d 752, 46 A. L. R. 2d 1189 (*Sup. Ct.* 1954) ; 2 *American Law of Real Property,* §§ 8.32, 8.37, *pp.* 256, 259 (1950) ; 17A *Am. Jur., Easements,*

§§ 41, 52, 53, *pp.* 652, 660, 661 (1957); 28 *C. J. S., Easements,* § 31, *p.* 689, *n.* 41.

■■ An easement by way of implied reservation requires consideration of the theory of *quasi*-easement. It arises as the result of the apparent use by the common owner at the time of the conveyance of a portion of the property usually denominated *"quasi*-servient tenement." The *"quasi*-dominant tenement," the remaining portion of the premises in the hands of the grantor, may have the benefit of this easement if the grantor can establish certain well-recognized requirements, referred to *infra,* as of the time of the conveyance. This theory is an exception to the general rule that a grantor may not be heard in derogation of his grant. *Blumberg v. Weiss,* 129 *N. J. Eq.* 34, 37 (*E. & A.* 1941); *Jancisin v. H. F. Realty Co., Inc.,* 8 *N. J. Super.* 568 (*Ch. Div.* 1950). However, an easement by implied reservation is more difficult to establish than that of an implied grant. *Pilar v. Lister Corp.,* 38 *N. J. Super.* 488, 496 (*App. Div.* 1956), affirmed 22 *N. J.* 75 (1956); 2 *American Law of Real Property,* § 8.39, *p.* 260 (1952); 28 *C. J. S., Easements,* § 30, *p.* 687, *note* 26; *Restatement, Property,* § 476, *comment c,* and *comment g, illustration* 7 (1944); but see *Seymour v. Lewis,* 13 *N. J. Eq.* 439, 447 (*Ch.* 1861); 17A *Am. Jur., Easements,* § 45, *p.* 656 (1957).

■■ For the defendants to establish the easement by implied reservation across plaintiffs' lot 8, block 47, they must prove at least circumstantially the presumed intention of the parties to the deed of 1881. *Kelly v. Dunning, supra;* 17A *Am. Jur., Easements,* § 41, *p.* 653 (1957). They must prove the following elements for the requisite pre-existing *quasi*-easement, namely, the apparent use of the *quasi*-servient portion of the estate for the *quasi*-dominant portion, the continuous nature of the use, the permanent character of the *quasi*-easement, and its reasonable necessity to the beneficial enjoyment of the dominant portion. *Blumberg v. Weiss, supra; Boylan v. Loy Corp.,* 128 *N. J. Eq.* 460 (*Ch.* 1941), affirmed 130 *N. J. Eq.* 203 (*E. & A.* 1941); *Pilar v. Lister Corp., supra* (38 *N. J. Super.,* at *page* 497);

*D'Amato v. Weiss,* 141 *Conn.* 713, 109 *A.* 2*d* 586 (*Sup. Ct. Err.* 1954); *Kling v. Ghilarducci, supra; Wiesel v. Smira,* 49 *R. I.* 246, 142 *A.* 148, 58 *A. L. R.* 818 (*Sup. Ct.* 1928); 2 *American Law of Real Property,* § 8.31, *p.* 255 (1952); 2 *Walsh, Law of Real Property,* §§ 235, 237, *pp.* 577–591 (1947); *Tiffany, Real Property (abridged ed.* 1940), § 542, *pp.* 545, 549; 1 *Reeves on Real Property,* § 141, *pp.* 174 *et seq.* (1909); *Restatement, Property,* § 476, *p.* 2977 (1944); 17*A Am. Jur., Easements* §§ 52 *et seq., pp.* 660 *et seq.* (1957); *Annotation* 164 *A. L. R.* 1001 (1946).

■ In the application of the above principles to the facts of the instant controversy, there is a clear void in the required proofs. The defendants' only argument is that at the time of the creation of the right of way, the grantor was a real estate company akin to our present-day land developers and since there was no convenient access to the waterfront lots on Barnegat Bay most distant from Princeton Avenue, it was only reasonable to assume that an implied easement was reserved for access from each lot that fronted on Ocean Avenue, as it was then contemplated, across the then presently granted railroad right of way to the bayfront properties, thereby preserving the beneficial use to the grantor. The proofs, however, fail to show that this property was, at the time of the 1881 conveyance, subdivided into the presently designated lots 1 through 10 in blocks 37, 38 and 47, or contemplated so to be. The first indication of subdivision in the present form supplied by the evidence is the conveyances to Benjamin Albertson of lots 8 in blocks 36, 37 and 38, and to Jennie R. Albertson (his wife) of lots 9 and 10 in blocks 36, 37 and 38 in 1889. The trial judge was justified in assuming that until these conveyances the property owned by the grantor, Sea Shore, east and west of the railroad right of way (now plaintiffs' property) constituted two undivided tracts of land running in a north-south direction, bounded by Princeton Avenue on the north, Ocean Avenue on the east, Barnegat Bay on the west, and bisected by the right of way, 66 feet in width extending 1300 feet in length, granted to the railroad.

There is obviously no proof of an apparent user of any *quasi*-easement to reach Barnegat Bay across the combined properties which now constitute lots 8 as they were then owned by Sea Shore. In 1881 it is doubtful that any such use was "noticeable and discoverable by the due and reasonable attentiveness of a prudent and diligent purchaser." *Pilar v. Lister, supra* (38 *N. J. Super.,* at *page* 498); see also *Restatement, Property,* § 476, *comment j, p.* 2987 (1944).

Although the adjective "necessary" is used in setting forth one of the factors indicative of the existence of a *quasi*-easement, it is to be noted that this element of evidence of intent differs from the "necessity" required in establishing a "way of necessity" discussed *infra. Cf. Toothe v. Bryce,* 50 *N. J. Eq.* 589, 594 (*Ch.* 1892). What is intended here is nothing greater than a reasonable necessity, and not the absolute necessity required in establishing an "easement of necessity." *Ibid; Pilar v. Lister, supra* (38 *N. J. Super.* at *page* 498); 17A *Am. Jur., Easements,* §§ 56, 57, *pp.* 665 *et seq.* (1957).

The facts in the instant matter negate the necessary nature and character of a *quasi*-easement. As indicated, although there was no direct and convenient access to lot 8 on Barnegat Bay from Sea Shore's nearby property fronting on Ocean Avenue after these properties were separated by the railroad right of way, there was access across Sea Shore's property to the west of the newly created right of way from Princeton Avenue, albeit across 700 feet of vacant land. The creation of Albertson Street some years later, which time is not certain from the record, lends further proof that beneficial use of the waterfront property, with access to that street, did not make reasonably necessary any easement across the railroad right of way from Ocean Avenue.

Defendants' theory would require an assumption that the railroad was impliedly agreeing that there should be as many separate and distinct easements of crossing of its right of way as the grantor might create future lot sites in the course of any subdivision of its adjacent land. Apart

from the dangers of such a situation, it cannot reasonably have been regarded as contemplated by either of the parties.

It therefore follows from the absence of proof of apparent user and the lack of the reasonable necessity for the contended easement that the elements of the permanent and continuous nature of the use are not disclosed as of 1881, the crucial time, and the argument of easement by implied reservation must fall.

 There is some authority that where a railroad right of way divides a tract of land so as to isolate a portion from any access to the remaining land, there will be implied a reservation for a right of crossing. Annotation 122 *A. L. R.* 1171 (1939). But there is no implication of a right indiscriminately to cross any and all portions of the right of way. *Heaton v. New York Cent. & H. R. R. Co.,* 86 *Misc.* 467, 149 *N. Y. S.* 71 *(Sup. Ct.* 1914). To agree with defendants' contention, it would be necessary to infer that there was a right to cross every individual lot contiguous to the right of way or which might subsequently be subdivided. As we have noted, it could never have been so intended either in 1881 or at any later time.

 In so far as the defendants' argument proceeds on the theory that a way of necessity was created, thereby establishing an easement which would now entitle them to cross the plaintiffs' property, they misconceive the issues. There is a distinction to be made between an easement by implied reservation and an easement of necessity. *Tiffany, Real Property (abridged ed.* 1940), §§ 542, 543, *pp.* 545–554. "They [easements of necessity] are not dependent upon the previous existence of *quasi* easements, but are implied because otherwise the land could not be utilized." *Tiffany, op. cit. supra, at p.* 552.

"Although a way of necessity is sometimes confused with an easement arising, on severance of title, from a pre-existing use, there is a definite distinction between them, mainly because a way of necessity does not rest on the pre-existing use but on the need for a way across the granted or reserved premises. \* \* \*

A way of necessity arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part

conveyed or the part retained is entirely surrounded by the land
from which it is severed or by this land and the land of strangers."
17A Am. Jur., Easements, § 58, pp. 668-669 (1957).

See also 2 *Walsh, op. cit., supra,* § 234, *p.* 573. The proofs
show that when the conveyance was made by Sea Shore in
1881, Princeton Avenue was in existence. At that time
there was no lot 8, merely Sea Shore's entire land holding
south of Princeton Avenue. There was obviously access to
that property, and therefore no easement of necessity (as
opposed to an easement by implied reservation) arose in
1881. *Cf. Man v. Vockroth,* 94 *N. J. Eq.* 511, 516 (*E. & A.*
1923).

Looking at the situation from the standpoint of lot 8 as
an isolated parcel, and assuming *arguendo* that a way of
necessity as opposed to an easement by implied reservation
existed at one time over the railroad right of way now owned
by the plaintiffs, the easement was extinguished when lot 8
in block 38 (the defendants' present waterfront property)
became united in title with the ownership of lots 9 and 10
in block 38 at least as early as 1913, when Albertson Street
first appears on the Segoine Map, although we note that the
three lots were actually united in title in the early part of
1901 and continued so until lot 8 in block 38 was individually
conveyed. Access to Albertson Street terminated any pre-
vious way by necessity. *Cf. Perth Amboy Terra Cotta Co.
v. Ryan,* 68 *N. J. L.* 474, 476-477 (*Sup. Ct.* 1902). See
*Waubun Beach Ass'n v. Wilson,* 274 *Mich.* 598, 265 *N. W.*
474, 103 *A. L. R.* 983 (*Sup. Ct.* 1936); *Whitfield v. Whit-
tington,* 99 *A. 2d* 196 (*Del. Ch.* 1953) (not officially re-
ported); 2 *Thompson on Real Property* (1939), §§ 533,
556, *pp.* 126, 157; 3 *Tiffany on Real Property* (*3d ed.*
1939), § 819, *pp.* 374-375; 17A *Am. Jur., Easements,* § 100,
*p.* 710 (1957); *Annotation* 103 *A. L. R.* 993 (1936). In
1922 Anna L. Albertson conveyed these three lots to Curles
J. Hulse and his wife. The latter in 1924 conveyed the
isolated lot 8 in block 38 to Beacon Hotel Company, prede-
cessors in title to the present defendants. The legal rela-

tionships between the successors in title of Hulse and the Beacon Hotel Company are not before the court.

 As indicated above, it is the law that a way of necessity arises only in relation to the conditions existing at the time of severance of common ownership, 2 *Thompson, Real Property* (1939), § 533, *p.* 126, which, in the present case was in 1881. Therefore, any contention that the conditions surrounding the 1924 conveyance support the imposition of a way of necessity cannot stand. We have found that the conditions in 1881 did not support establishment of a way of necessity and, if such a way had been created, it would have been extinguished by a subsequent elimination of the necessity. The predecessors of the plaintiffs and defendants, for the purpose of creating a way of necessity in 1924, were therefore strangers and it is well established that a way of necessity will not be decreed over the land of a stranger. *Poulos v. Dover Boiler & Plate Fabricators,* 5 *N. J.* 580, 587 (1950); 17A *Am. Jur., Easements,* § 59, *p.* 671 (1957).

Our disposition of the defendants' argument concerning the way of necessity does not require extensive discussion of the plaintiffs' contention that no absolute necessity existed for the proposed easement because there was a way to reach the defendants' waterfront property by boat. See, generally, 17A *Am. Jur., Easements,* § 63, *p.* 675 (1957).

 Finally, it is argued that defendants are entitled to passage across the railroad right of way by virtue of *R. S.* 48:12–49 which provides for "suitable and convenient passageways over * * * the railroad * * *" where the railroad intersects the land of an individual. There is no merit in this contention. This is a safety provision and obviously contemplates one or a relatively few crossings at fixed locations, in areas where there are no public crossings, not a right of indiscriminate crossings at many lot sites. In any event, the duty applies only as against a going railroad, not one which has been abandoned. *Cf. Marino v. Central R. R. Co.,* 69 *N. J. L.* 628, 632 (*E. & A.* 1903).

We agree with the trial court that the defendants have

no right, title and interest in the plaintiffs' lands, they have acquired no easement or right of way of any kind over and across the plaintiffs' property and the judgment enjoining them from trespassing is affirmed.