121 N.J. Super. 142 (1972)
296 A.2d 329
ARTHUR J. CALE, JR. AND CLAIRE CALE, HIS WIFE, PLAINTIFFS,
v.
JOHN R. WANAMAKER, JR. AND LOUISE DeKOVEN WANAMAKER, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 30, 1972.
*144 Mr. Anthony C. Meola for plaintiffs (Messrs. Dunn and Pykon, attorneys).
Mr. William I. Riker for Defendants (Messrs. Riker, Danzig, Scherer and Brown, attorneys).
MARTINO, A.J.S.C.
This is an action for a declaratory judgment to determine whether plaintiffs have a right of way over defendants' land on which is a house and a detached garage, either by way of necessity or by an implied grant of a quasi-easement.
The parties are in agreement that in 1881 the Seashore Company was the common owner of a large tract of undeveloped land in the Borough of Mantoloking, which extended from the Atlantic Ocean to Barnegat Bay. The tract included lands presently owned by plaintiffs and defendants, as well as other lands lying between Princeton Street on the north and Albertson Street on the south and intersected by Ocean Avenue.
By deed of 1881 Seashore Company conveyed a railroad right of way which divided lengthwise the property lying west of Ocean Avenue. The railroad right of way was abandoned in 1947 and was purchased by A. Gordon Adams. Lots 8, 9 and 10 in Block 38 are bordered on their easterly side by the former right of way. Until 1956 this right of way was used as an access to Lot 8 in Block 38. This use was successfully restrained by Adams in a previous suit which found that no legal right of way existed over the former railroad right of way as an access to Lot 8. Adams v. Cale, 48 N.J. Super. 119 (App. Div. 1958). Plaintiffs' lands are bounded on the north and east by the lands of others, on the south by defendants' lands, and on the west by the waters of Barnegat Bay.
*145 It is not disputed that by deeds dated May 27, 1889 Seashore Company conveyed Lot 8 in Block 38 to Benjamin Albertson and Lots 9 and 10 in Block 38 to Jennie Albertson. On March 11, 1901 the Albertsons conveyed these lands to William R. Albertson. On May 5, 1904 the lots were conveyed to J. Otto Rhome who, on the same day conveyed them to Anna L. Albertson. By this deed Anna L. Albertson became the common owner of Lots 8, 9 and 10 in Block 38 which includes plaintiffs' Barnegat Bay front lot and the two lots presently owned by defendants, Lots 9 and 10, lying between Lot 8 and the northerly side of Albertson Street.
By deed of May 10, 1922 Anna L. Albertson conveyed to Curles J. Hulse and Ollie M. Hulse Lots 8, 9 and 10 in Block 38. The description in the deed specifically refers to Albertson Street as a boundary line of the lots.
On March 25, 1924 Curles J. Hulse conveyed to the Beacon Hotel Company only Lot 8 in Block 38, resulting in an isolation of Lot 8 from any street. On August 17, 1925 Hulse conveyed Lots 9 and 10 in Block 38 to Jessie H. Seabury who, in 1950, conveyed these lots to the present defendants, John R. Wanamaker et al. Lot 10 is bounded on its southerly side by Albertson Street.
The diagram of the chain of title which is appended hereto has been examined by all parties and they have agreed that it accurately represents the passage of title of the lots in question.
Plaintiffs contend that since the conveyance of Lot 8 by the grantors Curles J. Hulse et al. to the Beacon Hotel Company in 1924, and the conveyance of Lots 9 and 10 by the same grantors to Jessie H. Seabury shortly thereafter, the only practicable means of reaching Lot 8 would be over Lots 9 and 10, which lots eventually became vested in defendants. As indicated earlier, plaintiffs had used as access to Lot 8 the lands of a former railroad right-of-way, but that use was restrained by the present owner of the former railroad right-of-way. Adams v. Cale, supra. At present the only lawful means of access to the plaintiffs' lot is by *146 way of the water of Barnegat Bay. Plaintiffs allege that Lot 8 will become valueless because of its inaccessability by land, and they seek a means of egress and ingress in order to make use of it.
An implied grant of a quasi-easement did not arise out of the conveyance by Hulse, the common owner, in 1924.
Where, during unity of ownership, a part of the land is utilized for the benefit of another part, a quasi-easement exists. When, upon conveyance, an easement corresponding to the preexisting quasi-easement arises for the benefit of the part conveyed as against the part retained by the grantor, it is called an "implied grant." A.J. & J.O. Pilar, Inc. v. Lister Corp., 38 N.J. Super. 488, 496 (App. Div. 1956).
For an implied grant of a quasi-easement to arise upon conveyance or severance of ownership, a permanent and obvious servitude must have been imposed on one part of the estate in favor of another part. The servitude must have been in use at the time of severance and have been necessary for the reasonable enjoyment of the other part. 25 Am. Jur.2d, Easements, § 27, at 440 (1966).
As of 1924, when the common ownership was severed by the conveyance of Lot 8, no such obvious and permanent servitude was imposed upon Lots 9 and 10 for the benefit of Lot 8. The railroad right-of-way had been conveyed in 1881 and was not part of the land owned by Hulse in 1924. Also, the use of this railroad right-of-way as a means of access was declared to have been an unlawful use by the court in 1957. Adams v. Cale, supra. No evidence supports an implication that an apparent, continuous, permanent and necessary quasi-easement existed prior to and at the time of the 1924 conveyance on Lots 9 and 10 for the benefit of Lot 8. In light of the circumstances surrounding the 1924 conveyance, an implied grant of a quasi-easement did not arise.
*147 A way of necessity across Lots 9 and 10 to Albertson Street grew out of the 1924 conveyance because it was a necessary incident to the grant.
An implied grant of a quasi-easement is to be distinguished from a way of necessity. Questions in respect of the permanency, apparency and continuity of the servitude, which are applicable in connection with easements implied on severance of the property, are not applicable to the way of necessity. A way of necessity does not rest on a pre-existing use but on the need for a way across the grantor's property. 25 Am. Jur.2d, Easements, § 28 at 441 (1966); Adams v. Cale, supra, at 131.
A way of necessity can only be established where there has been a unity of ownership, because no one can have a right-of-way over a stranger's land. A way of necessity grows out of some grant or change of ownership, to which it is attached by construction as a necessary incident. Poulos v. Dover Boiler & Plate Fabrications, 5 N.J. 580, 587 (1950).
Prior to the conveyance in 1924 a unity of title in Lots 8, 9 and 10 in Block 38 existed in the Hulses. It is out of the 1924 conveyance that plaintiffs seek to establish their right to a way of necessity. If, at one time, there has been a unity of title, the right to a way of necessity may lie dormant through several transfers of title and pass with each transfer and be exercised at any time. Adams v. Cale, supra, at 133.
Plaintiffs have stated that Lot 8 has been left undeveloped and not used because it is inaccessible and that they now seek a way of necessity over defendants' lands to make use of it. If a way of necessity arose out of the conveyance of 1924, plaintiffs can now exercise their right to it.
A way of necessity arises where there is a conveyance of a part of a tract of land which is wholly surrounded by lands which the grantor retains, or by the grantor's land and lands of strangers. In such cases, the way is a necessary incident to the grant, for without it the grant would be useless because the grant is necessarily for the beneficial *148 use of the grantee and the way is necessary to its use. Higbee Fishing Club v. Atlantic City Electric Company, 78 N.J. Eq. 434, 435 (Ch. 1911).
The conveyance in 1924 left Lot 8 surrounded by lands retained by the grantor (Lots 9 and 10), lands of strangers, and Barnegat Bay. The need for an access to Lot 8 had been satisfied by the unlawful use of the railroad right-of-way which must be classified as lands of a stranger in the 1924 conveyance. If the use of Barnegat Bay as an access to Lot 8 is found not to be a sufficiently practicable means of access, a way of necessity must have arisen over Lots 9 and 10 to Albertson Street for the benefit of Lot 8.
Although some courts have held that access to a piece of property by navigable waters negates the "necessity" required for a way of necessity, the trend since the 1920's has been toward a more liberal attitude in allowing easements despite access by water, reflecting a recognition that most people today think in terms of "driving" rather than "rowing" to work or home. 9 A.L.R.3d 600, 603 (1966). Parenthetically, it should be noted here that no evidence appears to indicate that access by boat over water would be reasonable or practicable.
The "modern attitude" was reflected in a 1965 Florida case where the plaintiff wanted to construct a dwelling on his land, but his land was inaccessible except over the defendant's land or by the waters of the Homosasa River. Redman v. Kidwell, 180 So.2d 682, 684 (Fla. App. Ct. 1965). The court reversed an order which had dismissed the landowner's complaint for a way of necessity, stating that for centuries rivers, lakes, seas and oceans provided the principal means of transportation. However, with the development of efficient means of overland transportation by railroad and by automobile, means of ingress and egress by water have become less necessary and desirable. The Florida court went on to state that in applying common law principles to present day problems, the court must take into account changing conditions to the extent that today access *149 to a parcel of land by boat over water, although reasonable and practicable a century ago, is not so today.
This "modern trend" was also reflected in a 1964 Maryland case, Hancock v. Henderson, 236 Md. 98, 202 A.2d 599, 602 (Ct. App. 1964). In relation to access by navigable water, the court stated that the more modern view, for sound policy reasons, is that a way of necessity may exist over the land of the grantor even though the grantee's land borders on a waterway if the water route is not available or suitable to meet the requirements of the uses to which the property would reasonably be put. This view is in line with the public policy underlying a way of necessity which favors the full utilization of land and the presumption that the parties do not intend the land conveyed be rendered unfit for occupancy.
In Cookston v. Box, 109 Ohio App. 531, 160 N.E.2d 327, 334 (Ohio Ct. App. 1959), the court held that egress and ingress by water was no valid argument, where no facilities or transportation whatever was available for carrying on the ordinary and necessary activities of life from and to the land in question by water.
The circumstances surrounding the conveyance of Lot 8 in 1924 indicate that an overland access to Lot 8 was intended. The parties mistakenly believed that the railroad right-of-way would provide such an access.
Without the railroad right-of-way, the only access, besides Barnegat Bay, to Lot 8 would be across Lots 9 and 10 to Albertson Street. Therefore, the necessity for a land access to Lot 8 can reasonably be implied from the conveyance in 1924, and it must cross Lots 9 and 10, presently owned by the defendants.
To allow a way for plaintiffs to have access to the public highway by necessity raises the question as to the extent of the roadway for that purpose and the location of the area to be so used.
*150 In Camp v. Whitman, 51 N.J. Eq. 467, 475 (Ch. 1893), it appeared that it was contemplated that the use of the access was by vehicle, and in that case the court so provided for a vehicular passageway. In this case it is difficult to determine the extent of the passageway contemplated when the conveyance was made. Nothing before the court suggests what would be an adequate right-of-way which would be fair to all concerned. It may be possible that the parties might themselves agree on the location of a way to permit ingress and egress. If not, then the court may, after hearing evidence directed to that sphere of the case, decide where and what area should exist to grant the plaintiffs the relief they seek. See Hancock v. Henderson, supra, at 603.
*151