218 N.J. Super. 18 (1987)
526 A.2d 1096
ELIZABETH LEACH AND ANNA LEACH ZSIDO, PLAINTIFFS-RESPONDENTS,
v.
JOSEPH ANDERL AND GISELA ANDERL, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1987.
Decided May 28, 1987.
*21 Before Judges FURMAN, DREIER and SHEBELL.
Edward Roy Rosen argued the cause for appellants (Rosen, Kanov & Watchman, attorneys; Edward Roy Rosen, on the brief).
Alexander Levchuk argued the cause for respondents (Levchuk & Wines, attorneys; Alexander Levchuk on the letter-brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
*22 This appeal involves a dispute between adjacent landowners over whether an easement presently exists along their common property boundary line. The Chancery Division found for plaintiffs and declared the right-of-way to continue on a theory of implied reciprocal easement. Defendants appeal from that judgment.
The right-of-way in dispute runs along a property boundary line common to two adjoining land tracts situated between Obre Road and Stockland Farms in Colts Neck. The parties do not dispute that the right-of-way originally existed as an easement by necessity since about 1840 for the benefit of a landlocked farm known previously as Obre's Farm and currently as Stockland Farms. This roadway ran from the farm property to Obre Road. The center line of the roadway formed the north and south borders respectively of the Leach and Anderl tracts, which were subdivided in 1932, while Obre Road and the farm formed the east and west borders respectively of both tracts. The easement was believed to be approximately 20 feet in width to accommodate farm traffic.
Richard Leach and plaintiff, Elizabeth Leach, acquired title to the tract south of the right-of-way in October 1955. Richard is now deceased. In 1958 they conveyed a subdivided parcel in the western half of their tract to John S. Zsido. This parcel is now held outright by their daughter, Anna Leach Zsido. The defendants, Josef and Gisela Anderl, acquired title to the tract north of the right-of-way in April 1963.
The deeds for each of these three tracts indicate a common property boundary line, described variously in the Leach and Zsido chain of title since the 1932 subdivision severing common ownership as the middle or center line of a 20-foot wide road running from Obre Road to Obre's Brook on Obre's Farm, and described in the Anderl chain of title since the same 1932 subdivision as the center or center line of the existing road to Obre's Farm.
*23 Differences also exist among the various surveys. The Anderls purchased under the 1954 Mitchell survey conducted for their predecessor-in-title. The starting point for that survey was the intersection of the center lines of the right-of-way and Obre Road as then existing contrary to prior deed descriptions which began at a red cedar tree which has since vanished. Based on the Mitchell survey, the right-of-way is now 10 feet wide with the eastern segment lying south of the center or boundary line described in the Mitchell survey. On the other hand, the 1974 S & M survey of the Leach tract confirmed the conclusions of the 1955 Seaman survey of the Leach tract, differing with the 1954 Mitchell survey by about 15 feet. Based on the Seaman survey, the eastern starting point of the center line of the right-of-way is about 20 feet north of where the Mitchell survey found it. Despite these and other discrepancies, plaintiffs' expert offered uncontested testimony that Mitchell's closure calculations produced no errors of significance.
In recent years of heavy use of the right-of-way by the owners of the landlocked farm, the defendants Anderl began sporadic attempts to partially impede the right-of-way by various obstructions and they closed the right-of-way for 24 hours in 1971. These attempts were allegedly to prevent incursion on the Anderls' property caused "by driving onto the side to be enlarged toward my property." In 1983, following litigation, the right of the owners of Stockland Farms to further use of the right-of-way was terminated by the court since Stockland Farms had acquired another tract of land connecting the farm with Obre Road. Since that time the only parties using the right-of-way have been the Anderls, Mrs. Zsido and Mrs. Leach.
Both the Anderl and Leach properties front Obre Road. The Leach home currently utilizes direct access to Obre Road independent of the right-of-way in dispute. The houses of the Anderls and Mrs. Zsido are set back a considerable distance from Obre Road and have relied on the right-of-way for ingress and egress. Plaintiffs assert that an easement exists 10 feet on *24 either side of the boundary line described in the 1954 Mitchell survey as following the center line of the right-of-way along the western segment before diverting north of the right-of-way along the eastern segment. Defendants assert there is no present easement, but that if it does exist it must follow the center of the current right-of-way.
The trial court in declaring "an implied and reciprocal easement" to exist adopted the engineering conclusions of the Mitchell survey, in particular the establishment of the beginning point and center line. The court bound all parties to a location of the right-of-way based on that survey. The defendants were held responsible for costs of restoration of the right-of-way to a 20 foot width, and both parties were held mutually responsible for continued maintenance.
At common law an easement is defined as a nonpossessory incorporeal interest in another's possessory estate in land, entitling the holder of the easement to make some use of the other's property. See Mahony v. Danis, 95 N.J. 50, 58 (1983) (Schreiber, J., dissenting). Six factors are integral to this definition:
(1) the fact that it is an interest in land which is in the possession of another;
(2) the content of the interest as a "limited" use or enjoyment of the land in which the interest exists; (3) the availability of protection of the interest as against interference by third persons; (4) the absence of terminability at the will of the possessor of the land; (5) the fact that it is not a normal incident of a possessory land interest, and (6) the fact that it is capable of creation by conveyance. [Town of Kearny v. Municipal Sanitary Landfill Auth., 143 N.J. Super. 449, 459 (Law Div. 1976)].
See generally Restatement, Property § 450 at 2901-2911 (1944 & Supp. 1987); 3 Powell, Real Property § 405 at 34-10 to 34-11 (1985 & Supp. 1987).
Easements may be created in one of the following ways: by implication; by an express conveyance; or by prescription. Mahony, 95 N.J. at 58. An easement by implication may be ascribed to a grant or reservation implied by a conveyor subdividing the land. Id. at 58-59; 3 Powell, supra, § 410 at 34-61. Implied easements operate on the principle that

*25 the parties to the conveyance are presumed to act with reference to the actual, visible and known condition of the properties at the time of the conveyance and intend that the benefits and burdens manifestly belonging respectively to each part of the entire tract shall remain unchanged. [Mahony, 95 N.J. at 59].
Implied easements are generally of two types: easements by necessity and quasi-easements. An implied easement by necessity arises by operation of law where "an owner of land conveys to another an inner portion thereof, which is entirely surrounded by lands owned by the conveyor...." 3 Powell, supra, § 410 at 34-62 to 34-63. Such an easement is found only in relation to the boundary conditions existing at the time of the original subdivision severing common ownership. See Ghen v. Piasecki, 172 N.J. Super. 35, 43-44 (App.Div. 1980); Adams v. Cale, 48 N.J. Super. 119, 133 (App.Div. 1957). An easement implied by necessity "is predicated upon the strong public policy that no land may be made inaccessible and useless." Old Falls, Inc. v. Johnson, 88 N.J. Super. 441, 451 (App.Div. 1965). "Thus, unless a contrary intent is inescapably manifested, the conveyee is found to have a right-of-way across the retained land of the conveyor for ingress to, and egress from, the landlocked parcel." 3 Powell, supra, § 410 at 34-66.
In contrast, an implied quasi-easement, as was found by the trial court to exist here, rests upon an owner's use preexisting the conveyance. It was a legal fiction designed to surmount the conceptual barrier which prevented the courts from recognizing an owner's easement in his own land. See Leasehold Estates, Inc. v. Fulbro Holding Co., 47 N.J. Super. 534, 560 (App.Div. 1957), certif. granted 25 N.J. 538 (1958). It is explained as follows:
Although the conveyor owned the property before the conveyance, he may well have used one part thereof for the benefit of another part. Such a use constituted a "quasi-easement" which the conveyor could effectively "except" on a conveyance of the servient land. These conceptual gymnastics can be avoided by the analytically sound view that ownership is itself a bundle of rights, privileges, powers and immunities, and that what a conveyor means by either reserving or excepting an easement in his favor, is the exclusion from the conveyance of those rights in the conveyed land constituting the intended easement. [3 Powell, supra, § 407 at 34-42 to 34-43 (footnotes omitted)].
*26 Consequently, a quasi-easement is founded on the following elements:
the apparent use of the quasi-servient portion of the estate for the quasi-dominant portion, the continuous nature of the use, the permanent character of the quasi-easement, and its reasonable necessity to the beneficial enjoyment of the dominant portion. [Adams, 48 N.J. Super. at 128].
Proof of all elements of an implied easement must be by clear and convincing evidence. A.J. & J.O. Pilar, Inc. v. Lister Corp., 38 N.J. Super. 488, 500 (App.Div.), aff'd 22 N.J. 75 (1956). There is an important distinction between the necessity elements of quasi-easement and easement by necessity in that
[w]hat is intended [with a quasi-easement] is nothing greater than a reasonable necessity, and not the absolute necessity required in establishing an "easement of necessity." [Adams, 48 N.J. Super. at 130].
See also Pilar, 38 N.J. Super. at 497-498. In cases of both quasi-easement and easement by necessity the question of the easement's existence is fact-specific. 3 Powell, supra, § 410 at 34-79. See, e.g., Adams, 48 N.J. Super. at 130 (access across 700 feet of vacant land negated the necessity element of a quasi-easement); Mullins v. Ray, 232 Md. 596, 194 A.2d 806, 808 (1963) (easement by necessity is not recognized if another road though less convenient could be built to a highway without unreasonable expense out of proportion to the value of the land).
The original right-of-way created around 1840, was an appurtenant easement by necessity. As the Leach and Anderl tracts evolved they were servient tenements to what later became known as Stockland Farms as the dominant tenement. An easement by necessity may terminate "by being extinguished by the course of events subsequent to its creation." 3 Powell, supra, § 421 at 34-240. "It is often said ... that easements cease upon a cessation of a need for their continuance." 3 Powell, supra, § 405 at 34-19. Thus, "[t]he duration and extent of such easements are influenced by the fact that `necessity' is basic to their creation ... [so that w]hen `necessity' no longer exists the easement terminates." Ghen, 172 *27 N.J. Super. at 43. As judicially declared in 1983, that easement was extinguished as a result of the cessation of any need for it on the part of the dominant tenement.
The question is whether the Leach and Anderl properties acquired and retained an easement coincident with the dominant tenement's easement by necessity despite the 1983 termination of the Stockland Farms' easement. Both tracts are derived from a common title through the 1932 subdivision. The trial judge carefully detailed the history and use of the road since that time by the adjacent owners.
The judicial power to declare an implied easement must be sensitive to changing realities and be exercised cautiously so as not to render certified title examinations unreliable or real estate titles unstable. Pilar, 38 N.J. Super. at 500. No easement by necessity can be found to exist as both the Leach and Anderl tracts front Obre Road. Thus there is no absolute need for an easement. The Zsido parcel may be landlocked but it derives from a subdivision of the Leach tract and therefore any appurtenant easement by necessity it may acquire to the public road must be across the Leach tract and not the Anderl tract.
In examining the necessity element of quasi-easement, it cannot be said that plaintiffs have clearly and convincingly shown that there is a reasonable necessity for use of the right-of-way across the other's tract to obtain the beneficial enjoyment of the dominant portion. See Adams, 48 N.J. Super. at 130. The trial judge does not appear to have examined the need for this essential element. He concluded instead that common sense dictates that each used the full 20 feet of the roadway for their mutual benefit and that it would be irrational to require that each cut a new road in from Obre Road. The trial judge noticeably omitted the element of reasonable necessity when he set forth the required elements of quasi-easement. In the absence of proof of this element a right-of-way based on quasi-easement must fail. Cf. Highway Holding Co. v. Yara *28 Engineering Corp., 22 N.J. 119, 129-130 (1956). We are satisfied factually from our careful examination of the testimony and the exhibits that there is no reasonable necessity for either of the plaintiffs to use the lands of the defendant in order to obtain the beneficial enjoyment of their properties. Given the minimal improvements to the right-of-way, duplicating the facility should not be unduly onerous.
We discern no easement by express conveyance as the record offers no evidence of any express grant of a right to use the adjoining property. An easement by express conveyance must be created by grant. E.g., Sergi v. Carew, 18 N.J. Super. 307, 311 (Ch.Div. 1952) (citing cases). Generally the language of such a grant is controlling. See Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591, 605 (1964). The several references to the right-of-way as a "roadway" in the various deeds are only for the purpose of describing the property and its boundaries and do not constitute a grant of a right to use the adjoining property.
Lastly, we examine whether an easement by prescription may be found to exist. "The nature of the user necessary for the creation of an easement by prescription is the same as that for the acquisition of title by adverse possession, i.e., it must be adverse or hostile, exclusive, continuous, uninterrupted, visible and notorious for a period of 20 years." Baker v. Normanoch Ass'n, Inc., 25 N.J. 407, 419 (1957) (citing cases). See N.J.S.A. 2A:14-6, 7, 30, 31. However, such adverse use need not be accompanied by "a knowing intentional hostility...." Mannillo v. Gorski, 54 N.J. 378, 386 (1969). Generally a possession is adverse if "an ordinarily prudent person would be put on notice that the land is in actual possession of another ..." so that
the claimant's use is "under a claim of right, pursued with an intent to claim as against the true owner in such circumstances of notoriety that the owner will be aware of the fact and thus alerted to resist the acquisition of the right by the claimant before the period of adverse possession has elapsed." [Patton v. North Jersey Dist. Water Supply Comm'n, 93 N.J. 180, 186-187 (1983) (quoting *29 Predham v. Holfester, 32 N.J. Super. 419, 424 (App.Div. 1954) (emphasis deleted))].
See also Pilar, 22 N.J. at 81. The burden of proving use sufficient to establish an easement by prescription consistent with the elements of adverse possession rests upon the claimant. Baker, 25 N.J. at 420. Cf. Patton, 93 N.J. at 187. "`The doctrine of tacking [may apply] as in corresponding cases of successive adverse possessions of land where privity exists between such possessors.'" O'Keeffe v. Snyder, 83 N.J. 478, 503 (1980) (quoting Walsh, Title by Adverse Possession, 17 N.Y.U.L.Q.Rev. 44, 83-84 (1939)).
The question of a prescriptive easement depends on the specific facts. See, e.g., Ludwig v. Gosline, 191 N.J. Super. 188, 191-192 (App.Div. 1983) (finding an easement by prescription as a result of the defendant's placement of concrete walk over the parties' common property boundary line); Spiegle v. Boro. of Beach Haven, 116 N.J. Super. 148, 161 (App.Div. 1971) (borough failed to establish prescriptive easement where it attempted to regulate the use of the beachfront for only approximately the last ten years and where its prior beneficial activities, directed toward protecting the integrity of the beach and maintaining it by collecting refuse, were not necessarily inconsistent with the rights of the owner of property oceanward of the building line); Felici v. Pennsylvania-Reading Seashore Lines, 83 N.J. Super. 373, 376-377 (App.Div. 1964) (occasional use of a "short-cut" pedestrian path incident to crossing a railroad track did not constitute an easement by prescription); Hazek v. Greene, 51 N.J. Super. 545, 558-559 (App.Div.) (permissive use of property by claimant of a prescriptive easement precludes the determination that any prescriptive rights could arise consistent with the elements of adverse possession), certif. den. 28 N.J. 58 (1958); Mulford v. Abott, 42 N.J. Super. 509, 513 (App.Div. 1956) (no prescriptive easement may be found where the mere continuance of a permissive use of a way between adjacent properties for the statutory period does not ripen into a hostile right, meaning "`with the intention to claim *30 title against the true owner, and, obviously it must appear that the possession, or use, which is claimed to be adverse was such that the owner knew or should have known that the disseizor intended to make title under it.'") (quoting Poulos v. Dover Boiler & Plate Fabricators, 5 N.J. 580, 588 (1950)); Koch v. Borough of Seaside Heights, 40 N.J. Super. 86, 94-96 (App. Div.) (the use of areas for street purposes for over twenty years does not constitute a prescriptive easement so as to prevent their use by the municipality for other than street purposes where the right asserted lacks continuity during the entirety of the period claimed and the use relied upon was more consistent with permission on the part of the municipal officials than with the assertion of a general public right to use the properties as streets in hostility to the reserved right of the municipality of unrestricted dominion), aff'd 22 N.J. 218 (1956).
There was some indication at the beginning of trial that plaintiffs might assert the theory of easement by prescription, but plaintiffs failed to develop the requisite elements. In certain instances adverse use may be presumed where it is shown that the user is acting openly, exclusively and uninterruptedly for the prescription period; however, there is a conflicting presumption which arises where the condition of the land and the use which takes place is such as to cause the use to appear casual and permissive rather than adverse or hostile. See Plaza v. Flak, 7 N.J. 215, 222 (1951). For instance, such permissive use may be inferred from the neighborly relationship of the parties. 3 Powell, supra, § 413 at 34-111 (citing cases).
Here, the use appears not only to have been permissive, but it was also clearly non-exclusive. These circumstances rebut any presumption that the use of the right-of-way was adverse in the sense that it was done "under a claim of right, pursued with an intent to claim as against the true owner in such circumstances of notoriety that the owner will be aware of the fact and thus alerted to resist the acquisition of the right by the claimant before the period of adverse possession has elapsed." Predham v. Holfester, 32 N.J. Super. 419, 424 (App.Div. 1954) (emphasis deleted). See also Baker, 25 N.J. at 420.
*31 The claimed use was not "exclusive" within the meaning required for an easement by prescription because until 1983 it was incidental to and dependent upon the right of the Stockland Farms' easement by necessity and was not a "distinctive" use personal to the claimant. See Hazek, 51 N.J. Super. at 556-557; 3 Powell, supra, § 413 at 34-124. The right-of-way was a creature of law, not originating in concurrent action by the adjoining landowners nor by provision of the original common owner. Cf. Annotation, Rights derived from use by adjoining owners for driveway, or other common purpose, of strip of land lying over and along their boundary, 27 A.L.R.2d 332, 341-355 (1953 & Supp. 1986). In addition, the record does not dispel the appearance of a permissive use based on the neighborly relationship between these parties and their predecessors prior to 1970. There is no indication that the use of the right-of-way by the Leaches or their predecessors-in-title was an adverse use until very recently and clearly for less than 20 years. It is a fair inference from the findings of the trial judge that the use was mutually permissive until recent years. Permissive use defeats any claim of adverse use. See Poulos, 5 N.J. at 588.
The decision of the trial judge was a fair and reasonable attempt to resolve a dispute between adjoining property owners. We are, however, unable to support that determination based upon the applicable law. Undoubtedly if the parties were operating on a cooperative basis and had voluntarily accepted the trial judge's reasoning, the resulting order might have served the best interests of all involved. However, there is an obvious lack of cooperation and it would appear that only further controversy would result from any attempt to have the parties mutually and cooperatively maintain a roadway which overlapped on each other's property by some ten feet.
We find no cause to disturb the trial judge's determination as to the location of the boundary line. With the line thus established, we do not perceive that it will be an unreasonable burden for the plaintiffs to take the steps necessary to provide *32 access to their premises without traveling upon defendants' land or for defendants to do the same.
We reverse and remand for entry of an appropriate modified order.